

**PC SCAN**

R

**RECEIVED**

IL

5/7/2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

KELY Y. ARBUCKLE (#B-89413)

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

**1:21-cv-02461**
**Judge Manish S. Shah**
**Magistrate Judge Jeffrey Cole**
**PC 7**

vs.

DR. GARCIA, MD;

DR. OKEZIE, MD;

Timothy J. Fahy, OD;

Wexford Health Sources Incorporated.

_____

_____

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

Case No: _____
(To be supplied by the Clerk of this Court)

**CHECK ONE ONLY:**

X          **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
**U.S. Code** (state, county, or municipal defendants)

_____       **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE**
**28 SECTION 1331 U.S. Code** (federal defendants)

_____       **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I. **Plaintiff(s):**

A. Name: KELY Y. ARBUCKLE

B. List all aliases: "J"

C. Prisoner identification number: B-89413

D. Place of present confinement: Stateville Correctional Center

E. Address: 16830 S. Broadway St, Route #53, P.O. Box 112, Joliet, IL 60434

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**
(In A below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in B and C.)

A. Defendant: DR. GARCIA

Title: Utilization Management Physician

Place of Employment: Wexford Health Sources, Inc.

B. Defendant: DR. OKEZIE, MD.

Title: Medical Director

Place of Employment: Stateville Correctional Center/Wexford employee

C. Defendant: TIMOTHY J. FAHY, OD.

Title: Optometrist

Place of Employment: Stateville Correctional Center/Wexford employee

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

Revised 9/2007

D. Defendant: WEXFORD HEALTH SOURCES INCORPORATED

TITLE: HEATH. CARE PROVIDER

PLACE OF EMPLOYMENT: WEXFORD Health Sources, Inc. ("Wexford") is a "for-profit" corporation headquartered in Pittsburg, Pennsylvania at: Foster Plaza 4, 501 Holiday Drive, pittsburg, PA. 15220. and Transacting business in ILLINOIS, "Wexford", pursuant To Contract with The State of ILLINOIS, is a healthcare provider for all ILLINOIS Department of Correction prisons Throughout ILLINOIS, including at Stateville Correctional center where it has been The exclusive provider of medical care for inmates incarcerated There, including Plaintiff.

2-(A)

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: ARBuckLE V. Wilcox et al. 1:20-CV-01419

B. Approximate date of filing lawsuit: February 26TH, 2020

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: Kely Arbuckle

D. List all defendants: James D. wilcox / LT. John Doe (Brian Givens) / Major Fredericks / C/o Johnson / Charles Best / Morcan Hudson / Randy Pfister / David Gomez / Lt. Brown / Sgt. Terrel Dork / C/o Garrett / C/o Jones / Deputy Director Robinson / warden Jacobs / Axerria Daniels

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): U.S. District Court, Northern District, Eastern Division

F. Name of judge to whom case was assigned: Hon. Manish S. Shah - U.S. District Judge.

G. Basic claim made: Cruel & unusual Punishment / Due Process Violations

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Pending

I. Approximate date of disposition: unknown - Represented By Counsel (Patrick D. John, Barclay Law Group) - Court Appointed

IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.

3

Revised 9/2007



[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IV. **Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

1. ON February 21st, 2018 I went For my Annual "offender Optometric Examination.

2. On February 21st, 2018 It was determined by Optometrist (Timothy J. Fahy, OD) That Plaintiff had "Progressive Myopia" -and- "Astigmatism" and Told Plaintiff That he recommended Plaintiff be Provided "Gas premeable" Contact Lenses To improve "VA" and "Suppress The Myopia Progression and stated he Would Refer plaintiff To UIC Lens clinic" for Contact fitting and Further Evaluation. See: (EXHIBIT-"3", Pages 9-10)

3. ON February 27th, 2018 (Wexford Health Sources Incorporated) Through "Collegial-Review" With (DR. Garcia) "Approved" a "UIC CONTACT LENS Clinic Evaluation Approved by Dr. Garcia After Referral Review for a patient with "Progressive Myopia and Astigmatism" - Onsite Optometrist "recommending Consideration of Contact Lenses To improve "VA" and Suppress Myopia Progression" -- Wexford Health Sources issued on (Authorization ID: #786547127) See: (EXHIBIT-"3", Page 11) which was Scheduled at "UIC" for

4

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]



[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(July 13th, 2018) - The "Collegial-Review" was "Stamped-Approved" by (Rozel Elazegui, MD) See: (EXHIBIT-"3", Page-12)

4. In (mid-May, 2018) Plaintiff spoke with (Nurse "CARA") - The nurse who Schedules Optometrist Appointments in The "Health Care Unit" at The Stateville Correctional Center - and Plaintiff inquired about his Appointment with The "UIC Contact Lens Clinic" - Nurse "CARA" checked my medical file and informed Plaintiff That Wexford had "Approved" The "UIC Appointment" To The "Contact Lens Clinic", but She Could Not Tell The Plaintiff The EXACT DATE For Security reasons, but That The Appointment was "already Scheduled" and That The Plaintiff would be Sent To "UIC" within 60-days.

5. After (mid-July, 2018) Plaintiff Again spoke To "Nurse CARA" and Told her That Plaintiff Still "had NOT been Taken to "UIC Contact Lens Clinic", -- Nurse "CARA" Again checked Plaintiff's medical file To See "why" Plaintiff had Not been Taken To his "Scheduled Appointment", Nurse "CARA" informed Plaintiff That "He Should have been Taken To "UIC" on (July 13th, 2018), which Plaintiff informed Nurse "CARA" did Not occur, Nurse "CARA" Stated She would bring it To The medical Director's Attention and

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

"Re-Schedule" The Appointment as soon as possible, and That She would Notify plaintiff "When" The Appointment was Rescheduled.

6. On or About July 25Th, 2018 and After <u>Not being</u> <u>informed</u> That The Appointment at "UIC" had been re-scheduled, plaintiff spoke to Nurse "PAGE" as she passed plaintiff's Cell (Bravo-625) While She was passing out Medication, and plaintiff Asked "Nurse PAGE" To Check and see if plaintiff's "UIC Contact Lens Clinic" For Contact Lens evaluation and Lens fitting had been Rescheduled? Nurse "Page" Stated She would Check on iT.

7. After not hearing anything from Nurse "PAGE", and patiently waiting on The process (for over a month), Plaintiff Signed up for "Sick-Call" Again, because plaintiff had not been informed "why" he <u>was not</u> Taken To "UIC" on The (July 13Th, 2018) <u>Scheduled Appointment</u>, Nor, had plaintiff been Advised of any "Rescheduling" of The appointment.

8. On August 30Th 2018 Plaintiff saw "Nurse page" at "Sick-Call", and upon Reviewing The "Medical-File", "Nurse Page" Then <u>informed</u> Plaintiff That "He was <u>Not</u> Approved for Contact Lenses due to not being "Medically Necessary".-- Plaintiff Asked "How This is possible Since The "Optometrist" stated They <u>were</u> "<u>Medically Necessary</u>" To "improve VA and Suppress The Myopia Progression That was Continuing To Worsen? <u>Also</u>, Plaintiff informed "Nurse page" That plaintiff had already been "<u>approved</u>" By "wexford" during a "Collegial-Review" and An Appointment was previously Scheduled with "UIC" on (July 13Th, 2018), So plaintiff Asked "Nurse page" "How" it could <u>possibly be</u> (Not be Medically Necessary"), when The <u>only</u> <u>optometrist</u> plaintiff <u>has</u> Ever Seen

⑬

was "Timothy J. Fahy, OD", The one who stated "Gas premeable" (contact Lens) were "medically-necessary" and That he would Recommend That plaintiff Receive "contact Lens" To improve The "VA" and Suppress The myopia progression? - "nurse page" Then informed plaintiff he was denied contact Lens due To not being medically necessary is what The medical-file stated, The plaintiff being in "utter-disbelief", asked "nurse-page" for a Copy of The alleged "denial", and stated That plaintiff would be required To get a "Doc.0241 form" From The "medical-Director" To obtain a Copy of This "medical Record Document".

9. Plaintiff Requested The (Doc.0241 Form) which he received on September 25th, 2018, and Submitted his Requests for "All Records/documents pertaining To plaintiff's Optometrist file in 2018" (EXHIBIT-1)

10. ON December 6th, 2018 plaintiff was called over to The "Health Care unit" To Receive The "requested documents" Regarding The Listed Request Submitted on The (Doc. 0241 Form). Plaintiff "Signed" for The Release of his medical Records. See: (EXHIBIT-2)

11. After Reviewing The Records from my medical file, "Optometrist Timothy J. Fahy" - referred plaintiff To "UIC Contact Lens Clinic" for "Evaluation" and "Fitting". See: (EXHIBIT-3, page 9), Also, The "medical Special Services Referral and Report" Prepared by Optometrist Timothy J. Fahy, Do" states The Rationale for Referral: "Progressive myopia and Astigmatism" - consider contact Lenses To improve VA & suppress myopia progression", see: (EXHIBIT-3, page 10) which establishes "medical-necessity", Dated 2-21-18.

7

12. The "offender Outpatient Progress Notes" of 2-21-2018 reflect that the "Collegial Review" for "Contact Lens Clinic" and referral for "Evaluation" and "Contact Fitting" Signed by (Rozel Elazegui, MD) See: (EXHIBIT -3, page 12) - Further, Wexford Health Sources Incorporated "Utilization Management" Sent it's "Authorization" to the "Site Medical Director" and "HSA" on "2-27-2018" which stated "Based upon a review of the Information provided, Service is "Approved". See: (EXHIBIT -3 page 11). Comments:

"UIC Contact Lens Clinic Eval approved by Dr. Garcia after Referral review for a patient with progressive Myopia and astigmatism. Onsite Optometrist recommending consideration of Contact lenses to improve VA and Suppress Myopia Progression. BCVA with glasses 20/30 and 20/40.

13. On August 3, 2018 An "offender outpatient progress Notes" (Form) alleged that there was a "Collegial-Review" regarding patients "Progressive, Myopia and Astigmatism" where "UIC Contact Lens was allegedly disapproved", and a New plan was to "Refer to our optometrist" (which is the Same optometrist that Made the Referral on 2-21-18. See (EXHIBIT 3, page -13)

14. On August 7th, 2018 "Utilization Management" Further alleged That There was a "Collegial-Review" on 7-31-18, which is NOT (noted) anywhere in the "medical-Records" in any "offender-outpatient progress Notes", and a decision was made between (Dr. Garcia) and (Dr. Okezie), Neither of which is an optometrist, That UIC will Not see patient due to Contacts Not being "Medically Necessary". See: (EXHIBIT -3, Page 14) - Which is Contrary To The onsite optometrist (Timothy J. Fahy, OD") Initial Assessment That Contact Lenses were "Medically Necessary" To Improve "VA" and Suppress Myopia Progression.



15. On August 8th, 2018, (without even seeing plaintiff) The optometrist, "Timothy J. Fahy, OD" was Informed That the Patient (plaintiff) was denied Contact Lenses, and instructed To have plaintiff To Return For "Follow-up" in 12-Months For "Re-evaluation of refraction". See! (EXHIBIT-3, page-15)

16. On August 30, 2018, (D. page LPN) Saw plaintiff at "Sick-call" where plaintiff was inquirying about his "utc contact Lens Clinic" (Appointment) — she informed plaintiff That he was not Approved, and would refer plaintiff To The optometrist for explanation. See (EXHIBIT-3, page-16)

17. On December 12th, 2018, only (6)-days After Receiving The "Medical-Records", Plaintiff filed his Grievance. See! (EXHIBIT-3), and Requested The prescribed Treatment That Optometrist "Timothy J. Fahy, OD" prescribed of February 21st, 2018.

18. On December 14th, 2018, Plaintiff watched Counselor (Ms. Williams) Remove all The Grievance's out of The "Blue-Grievance-Box" in Brovo-House, which is visable From plaintiff's (Cell B-625)

19. On January 6th, 2019, Plaintiff wrote (Colleen M. Franklin) Correctional Counselor II and inquired why he had Not received a "Receipt" (or) "Grievance Number"? — Ms. Franklin Failed To Respond

20. On January 23rd, 2019, Plaintiff Again wrote (Colleen Franklin, Correctional Counselor II) Concerning Not Receiving a "Receipt" or "Grievance Number" To his — — December 12th, 2018 Grievance. See! (EXHIBIT-3, page 25) — — Again, NO RESPONSE from Colleen Franklin.

—9—



21. On January 22ⁿᵈ, 2019, Plaintiff had written The "Brovo-House" (6-Gallery Counselor) inquirying about The December 12ᵀʰ, 2018 Grievance. See: (EXHIBIT-3, page 26) However, Counselor Jackson "Responded" On January 26ᵀʰ, 219 with a "Generic-Reply" about "Where" The (12-12-2018 Grievance) may be, because it was a "medical-Issue", without addressing The fact That Plaintiff had NOT Received a "Receipt" (or) "Grievance Number" (per policy), or To determine "exactly where" The Grievance was. See: (EXHIBIT-3, pages 27-28)

22. Due To "No Response" from (Colleen M. Franklin) To The January 6ᵀʰ, 2019 Inquiry, Plaintiff Again wrote (Colleen M. Franklin) with a "Proof/Certificate of Service" on January 23ʳᵈ, 2019, which again resulted in "No Response", even Though Plaintiff gave ("written warning") That if She Failed To Respond Within (10)-working Days, Grievant would be forced To Consider The "Initial-Stage" of The Grievance Procedure "UnAvailable". See: (EXHIBIT-3, Pages 24-25)

23. Due To "No Response" from (Colleen M. Franklin) and The "Grievance process" (Not being Available) at "Stateville Correctional Center," and The ("Facility") Not Complying with Department Rule 504, On February 27ᵀʰ, 2019, Plaintiff (Forwarded) a "Copy" of The (12-12-2018 Grievance) To (Sherry Benton) of The "Administrative Review Board" based On The "Unavailability of The Grievance procedure at Stateville" in Accordance with (20 Illinois Administrative Code 504) See: (EXHIBIT-3, pages 1-3)

24. On March 9ᵀʰ, 2019, Plaintiff Sent a Letter To (Kelly Ledford), "office Coordinator", along with a "notorized proof/



Certificate of Service. See: (EXHIBIT-5), This Letter explains The efforts Plaintiff had made To Not only 'Locate" The Grievance and obtain The (Grievance Number) and (Receipt) which was policy To provide, However, (Kelly Ledford) Responded, and wrote:

"I have Searched our Logs and We do Not Have a December 2018 Grievance of This Type.
(Signed) "K. Ledford"

See: (EXHIBIT-5, page 2 of 2)

25. On MARCH 15TH, 2019, Plaintiff "Received" a "Counseling Summary" from (COLLEEN M. Franklin), which is a ("Grievance-Receipt"), Claiming That on 03/13/2019 She Made a "Late entry" **** Receipt of Grievance on —1/7/19— Regarding medical Issues (Despite it being filed on 12/12/2018) Assigning it Grievance #_7688_ See: (EXHIBIT-6)—(HERE) (COLLEEN M. Franklin, Correctional Counselor II) Totally Falsied This "Counseling Summary" By:

First: Falsely Claiming The Grievance was Received on 1-7-2019 (when in Fact it was placed in The Grievance Box on 12-12-2018, and plaintiff and his (Then Cell-mate) visually watched (Williams, cell) Take The Grievances out of The Grievance Box on Friday, (12-14-18);

Second: By falsely Claiming it was a "Personal", "Face-To-Face" Counseling, when in Fact it was Sent Through The "Institutional Mail" and Received on 3/15/2019.

Third: Even The Counseling Date That "Colleen M. Franklin" made The "late-entry" on 03/13/2019 was Still in violation of Department Rule 50¼ Facility Response Deadline of 60-days, Thus making The procedure Still unavailable.

⑱

26. On March 21st, 2019 Plaintiff "Received" a (Response) from (Sherry Benton) of The "Administrative Review Board" dated (March 8, 2019). See: (EXHIBIT-4) Which stated: "Medical ISSUES are To be reviewed at your Current facility prior To review by The Administrative Review Board." -- (HERE) The "Facility" and "Health Care UNIT" failed To Respond To The properly filed Grievance WITHIN The Timeframe Set forth IN Department Rule 504 WITHIN (60)-days of filing The Grievance, Thus, making The Grievance procedure "Unavailable". Likewise, (Sherry Benton) marked (EXHIBIT-4) AS "NOT being Submitted in The Timeframe OutLined in Department Rule 504", Therefore, This ISSUE will NOT be addressed further." -- (HERE), AT The Time Plaintiff filed The Grievance on (12-12-2018), Plaintiff Still had NOT SEEN The "Optometrist" That was "Reportedly Scheduled" To See Plaintiff and "Explain" "Why" Plaintiff was NOT Taken To "UIC Lens Clinic" for "Evaluation and Contact fitting" on July 31, 2018 as Scheduled and "Approved", - INSTEAD, on (August 3rd, 2015) "Approved" Plaintiff Questioned why he was NOT Taken To his "Approved" "UIC-Lens Clinic Appointment", (Dr. Okezie and and recommended Dr. Garcia) had another "Collegial-Review", which was Noted in The medical file on (8/3/18) See: (EXHIBIT-3, page 13) with "A plan" "of referral To The facility Optometrist" -- The (same) Optometrist "That recommended" The UIC-Contact Lens Clinic evaluation and Contact fitting Due To "progressive Myopia" and "astigmatism" To Consider Contact Lenses To improve VA and Suppress Myopia progression See: (EXHIBIT-3, page-10) -- However, (Dr. Garcia) The "Utilization Management Physician (Attempts) To "Back-Date" The Alleged ("Collegial-Review") To (7-31-2019) in a document (he prepared) on August 7, 2018. See: (EXHIBIT-3, page 14) To ("Make it Appear") as if on The day Plaintiff was "Scheduled" For The "UIC-Lens Clinic Appointment" - That ("UIC") made The "determination"



"That Contact Lens were Not Medically Necessary". (without Doing The "evaluation" optometrist (Timothy J. Fahy, OD) recommended For "Contact-fitting" at UIC-Contact Lens Clinic) —— (HERE) plaintiff filed his (12-12-2018 "Grievance") oNLY (6)-days After plaintiff found out Through Medical Records That (Dr. Garcia) and (DR. Okezie) Actually had a Second "collegial-Review" oN August 3rd, 2018 After plaintiff had Not Been Taken To his UIC-Appointment. Thus, Plaintiff's Grievance was "Timely filed", and it has clearly been (The "Facility") Not Complying and Responding within The Timeframe Set forth In Deparmental Rule 504, Thus, Making The Grievance Procedure "UnAvailable".

27. On August 27th, 2019, over (8)-Months After filing The (12-12-2018) "Grievance", and (6) Months Beyond The (Facilities) "Timeframe" for Responding set forth in Deparmental Rule 504 plaintiff (Received) a "Response" To The "Grievance". See: (EXHIBIT – 7)

28. On August 30th, 2019, plaintiff "Appealed" The "Grievance officer's Report" and "Chief Administrative officer's Response" of 8-27-19 To The Administrative Review Board", which Deparmental Rule 504 allows (6)-months for The ARB To Respond To Grievance Appeals. —— However, (Sherry Benton) And The "Administrative Review Board" has failed To Respond To The Timely filed Appeal on 8-30-2019 which allowed (6) Months for The "ARB" To Respond, and Taking The (Covid-19 pandemic) (into Account,) allowing An Additional (6)-months Due To State facilities and IDOC offices on "Quarantine", The "ARB's" Failure To Respond To The Appeal, makes This procedure unavailable in The Grievance process.



29. The ILLINOIS Department of Corrections "Administrative Directive" 04.03.123 II, (D) defines: "medical Need" – includes Cataract excision with aphakia, corneal scarring, Visual defects That cannot be adequately corrected with eyeglasses because of Corneal irregularities or other focusing defects, and other medical conditions defined by an ophthalmologist or optometrist which prevent adequate vision correction without The use of contact lenses. See: (EXHIBIT-"3", page 17).

30. The ILLINOIS Department of Corrections "Administrative Directive" 04.03.103 II. F. 3, b, (2)(b),(2)(c) iii -- states in relevant part:

— (3.b): offenders shall be referred for specialty services if determined medically necessary.

— (3.b.(2): The facility medical Director shall review The referral and make a determination and:

— (b) if approved, submit The referral To The Utilization management Unit of The facility's health care vendor. The referral may be made in writing or verbally Through a collegial review. Verbal reviews Shall be documented on The progress notes in The offender's medical Record.

— (c) The vendor's utilization management Unit will review The Referral and must submit a written Response To The facility medical Director within five working days

— iii. If The referral is approved, The facility medical Director shall ensure services are scheduled and The course of Treatment is initiated.

See: (EXHIBIT-"3", page 19-20)

-14-



31.  Wexford Health Sources Incorporated — "Optometry Medical Policies And Procedures" — See (EXHIBIT -"8") at (opt-6) which states:

— II. Contact Lenses are provided only for "medical needs" such as:

— B. "Severe Myopia" or hyperopia (greater Than +/-15 diopters) where standard lenses do not afford adequate refraction.

See (EXHIBIT -8 at opt-6)

## EXHAUSTION

32.  The Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a), provides That no action be brought by a prisoner with respect To prison conditions until "such administrative remedies as are available are exhausted."

33.  Plaintiff has exhausted all available remedies by repeatedly initiating formal grievance procedures in efforts To obtain proper medical Treatment. All of plaintiff's grievances have been improperly denied, and/or The Administration by and Through it's employees failed To Timely file responses in Accord with Departmental Rule 504, Thus, making The remedy unavailable, and failing To Acknowledge, The Administrations own default in The Grievance process, and despite The Administrations "defaults", plaintiff still made "Numerous" Attempts To Allow The Administration The opportunity To Respond To The Timely filed Grievance at Every-Stage of The Grievance process.

22

## Count-I

(42 U.S.C. § 1983 ~ Cruel and Unusual Punishment)
(Defendant "Dr. Garcia" and "Dr. Okezie")

34. Plaintiff incorporates paragraphs 1 through 33 of This Count-I.

35. The Eighth Amendment of The United States Constitution Prohibits The Cruel and Unusual Punishment of United States Citizens by The State of Illinois or by The Federal Government.

36. Plaintiff's rights under The Eighth Amendment To be free from Cruel and Unusual punishment by The State of Illinois have been abridged by Dr. Garcia and Dr. Okezie's deliberate indifference To plaintiff's serious medical needs.

37. Dr. Garcia, at all Times relevant To This Complaint, was an employee and/or agent of Wexford and a utilization management physician.

38. Dr. Okezie, at all Times relevant To This Complaint, was an employee and/or agent of Wexford and The medical Director of Statesville Correctional Center.

39. Plaintiff has demonstrated in paragraphs 1 through 33 That he was diagnosed with ("Progressive Myopia" and "Astigmatism") which (Dr. Timothy J. Fahy, OD) determined was a "Serious medical Condition," and Recommended an "Evaluation" and "Contact Lens Fitting" To "Improve VA" and "Suppress Myopia Progression."

40. Dr. Garcia of utilization management on 02/27/2018 "Approved" The on-site optometrist (Dr. Timothy J. Fahy OD) recommendation of Consideration of Contact lenses To improve VA and Suppress

Myopia progression, __Thus__ "recognizing" That plaintiff's medical need was "sufficiently serious", and "mandating Treatment", and, __Further__ Dr. Garcia knew of The substantial risk of harm due to myopic progression if left untreated.

41. Defendants "DR. Okezie" and "DR. Garcia" __deliberately__ __denied Treatment__ That __was__ previously Recommended By (optometrist Timothy Fahy, OD) and, Treatment __was__ __Previously__ "Approved" and "Scheduled" -- Through "Collegial-Review"

42. - Defendants "DR. Garcia" and/or "DR. Okezie" committed one or more of The following Acts of deliberate indifference and reckless disregard of The Serious medical needs of plaintiff:

    a. Denied prescribed medical Treatment by an "on-site optometrist" After Treatment was "approved" and "Scheduled", and __only__ (denied Treatment) __After__ The Scheduled Appointment __was missed__ "(due To) Defendants failure To Notify custody-staff of The Scheduled Medical Appointment;"

    b. Denied Treatment __after__ "it was prescribed" and (Approved) without being examined or evaluated by an optometrist prior To The denial of previously prescribed Treatment;

    c. Deliberately denied Necessary "evaluation" and "Contact Lenses fitting" To reduce The expense To Wexford of engaging off site specialists for inmates medical care;

    d. Was otherwise deliberately indifferent To The Serious medical needs of plaintiff

43. As a direct and proximate result of one or more of the foregoing acts of deliberate indifference and reckless



disregard, Plaintiff was caused to suffer further irreparabale harm, disability by loss of sight, and loss of a normal Life by failing to provide Adequate medical Treatment to "improve VA" and "suppress Myopia progression."

44. While in the Custody of the state of Illinois, Plaintiff is restrained from caring for himself and Defendant's "DR. Garcia" and "DR. Okezie" has deliberately delayed and/or denied medical care necessary, to alleviate obvious damage and suffering resulting from "Myopia progression" and "astigmatism" which will progress (without) the prescribed Treatment.

45. Defendant's "DR. Garcia" and "DR. Okezie" have further shown deliberate indifference to Plaintiff's serious medical needs by deliberately disregarding the potential risk of damage to Plaintiff's eye's.

WHEREFORE, Plaintiff prays that the Court:

a). enter judgment against Defendants and in favor of Plaintiff for damages in an amount to be proven at Trial;

b). enter a judgment against Defendants for punitive damages;

c). order "injunctive relief compelling defendants to provide the medical care previously "Approved" and "prescribed" for evaluation and Contact Lenses fitting.

d). enter judgment against Defendants and in favor of Plaintiff for Costs, and Attorney's fee's.

e). order Such further relief as this Court may deem appropriate.

—18—



<u>Count -II</u>
( <u>42 U.S.C. § 1983</u> - <u>Denial of Medical Care</u> (Eighth Amendment) Against
<u>Wexford Health Sources, Inc.</u>)

46. Plaintiff incorporates paragraphs 1 through 45 herein as if fully restated here in Count -II.

47. Defendant Wexford has, at pertinent times hereto, certain Policies, Procedures and Practices in effect at Stateville which were consciously and deliberately indifferent to the serious medical needs of inmates incarcerated there, including Plaintiff; specifically policies, procedures and practices:

a.) To cancel <u>previously approved</u> "off-site" medical services, due to Wexford Staff <u>Failing To</u> "Notify" (IDOC custody Staff of the scheduled medical writ) --

b.) To cancel "<u>previously prescribed</u>" medical treatment ordered by other physicians or healthcare providers (without) <u>any further</u> "medical examinations" of the patient by another physician or optometrist. --

c.) To force "Wexford employee's (to alter) "<u>previously</u> <u>prescribed</u>" and <u>Approved</u>" medical treatment, (without) any further evaluation of patients.

d.) To ignore inmates' serious medical needs which might require off-site evaluation and treatment,

e.) To persistently provide inadequate and ineffective medical care and treatment of serious medical needs until irreversible and irrepairable harm and damage occurs,

f.) To be otherwise deliberately indifferent to inmates', including Plaintiff's serious medical needs.

—19—



48. As a direct and proximate result of one or more of the foregoing acts of deliberate indifference. Such acts and conduct having been caused by Wexford's policies, procedures and practices, Plaintiff was caused to suffer "progressive myopia" and "Astigmatism" that causes "further loss of sight", disability and loss of Normal life. Plaintiff is thereby deprived of rights, privileges and immunities guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution and specifically suffered cruel and unusual punishment.

WHEREFORE, Plaintiff prays that the Court:

a). enter Judgment against defendant and in favor of Plaintiff for damages in an amount to be proven at trial;

b). enter Judgment against defendant for punitive damages;

c). order "Injunctive Relief" compelling defendant to provide the medical care previously "Approved" and "prescribed" for "evaluation" and "Contact lenses fitting";

d). enter a judgment against Defendant and in favor of plaintiff for costs and Attorney's fee's;

e). order such further relief as this court may deem appropriate.

## Count - III
(42. U.S.C. § 1983 – Cruel and Unusual Punishment)
(Defendant - Timothy J. Fahy, OD)

49. Plaintiff incorporates paragraphs 1 through 48 as if fully restated herein in Count - III.



50. The Eighth Amendment of The United States Constitution Prohibits The Cruel and Unusual Punishment of United States Citizens by The Federal Government and The State of ILLINOIS

51. Plaintiff's rights under The Eighth Amendment To be free from Cruel and Unusual Punishment by The State of ILLINOIS have been abridged by Defendant (Timothy J. Fahy's) deliberate indifference To plaintiff's Serious medical Needs.

52. Timothy J. Fahy, OD, at all relevant Times To This Complaint, was an employee and/or agent of Wexford, and The "On-site" Optometrist of Stateville Correctional Center.

53. While in The custody of The State of ILLINOIS, plaintiff is restrained from caring for himself, and Timothy J. Fahy, OD has deliberately delayed and/or denied necessary medical care and Treatment that he <u>once prescribed</u> and <u>recommended</u>, which was "<u>Approved</u>" and "<u>Scheduled</u>" To an "off-site" medical provider for evaluation and Lenses fitting due To "Astigmatism" and "Progressive myopia", which will become progressively worse without The prescribed medical care and Treatment.

54. Defendant Timothy J. Fahy, OD. as The on-site optometrist showed deliberate indifference To plaintiff's serious medical needs by:
a). Initially "prescribing and Recommending" For plaintiff To be sent To an off-site medical provider for "evaluation" and "contact lenses fitting" To "improve VA" <u>and</u> "Suppress myopia progression" (as he proclaimed he would recommend For Any patient in his private practice), "which was <u>Approved</u> Through "Collegial-Review" and "<u>Scheduled</u>" with



an "off-site" medical provider, and at the Direction of (Dr. Garcia) <u>without</u> any further examination of plaintiff, Rescheduled a Follow-up examination a year later, <u>without</u> providing The medical care and Treatment "Previously Prescribed" and "Recommended".

b. deliberately disregarding The potential risk of damage To plaintiff's eye's due to "Astigmatism" <u>and</u> "progressive Myopia"

c. Causing further irreversible injury to plaintiff's eye Site as a direct result of failing to provide Necessary Medical Treatment To "improve VA" and "Suppress progressive Myopia".

55. As A direct result of Timothy J. Fahy's Conduct and deliberate indifference To plaintiff's Serious Medical Needs, plaintiff's Suffering has Needlessly been exacerbated, Resulting in physical and emotional injuries.

<u>WHEREFORE</u>, Plaintiff prays That The Court:

a). enter judgment against Defendant and in favor of plaintiff for damages in an amount To be proven at Trial;

b). enter a judgment against Defendant for punitive damages;

c). Order "Injunctive Relief" <u>compelling</u> defendant To provide The medical care and Treatment Previously "Prescribed", "Recommended" <u>and</u> "Approved" for "evaluation" and "Contact Lenses fitting";

— 22 —



d). enter a judgment against Defendant and in favor of plaintiff for costs and Attorney's fee's.

e). order such further relief as This court may deem appropriate.



[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

V.    **Relief:**

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.

See Individual "Counts" (pages 16 Through 23)

VI.    The plaintiff demands that the case be tried by a jury.    ☒ YES    ☐ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief.  I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this _____ day of MAY , 20 21

Kelly Arbuckle
(Signature of plaintiff or plaintiffs)

KELY Y. ARBUCKLE
(Print name)

B-89413
(I.D. Number)

STATEVILLE CORRECTIONAL CENTER

P.O. Box 112

JOLIET, ILLINOIS 60434
(Address)

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]



IN THE

Circuit Court of Will County

KELY ARBUCKLE #B-89413 )
Plaintiff/Petitioner )
)
Vs. )                    No. _____
)
DEBRA CONNORS-JOHNSON )
Defendant/Respondent )

## PROOF/CERTIFICATE OF SERVICE

TO: Debra Connors-Johnson          TO: _____
    RHIT                               _____
Medical Records Director             _____
Stateville Correctional Center       _____

PLEASE TAKE NOTICE that on September 26, 20 18. I placed the
attached or enclosed documents in the institutional mail
at Stateville Correctional Center, properly addressed to the
parties listed above for mailing through the United States Postal Service (AuthorIzatIon FoR
RELEASE of OFFENDER MEDICAL HEALTH INFORMATION "Form" Submitted to
Medical Records DIRECTOR)

DATED: 9-26-18          /s/ Kely Arbuckle
                        Name: Kely Arbuckle
                        IDOC#: B89413
                        Address: Stateville C.C.
                                 PO Box 112
                                 Joliet, IL 60434

Subscribed and sworn to before me this 26th day of September, 2018

_____
Notary Public

OFFICIAL SEAL
PHYLLIS BAKER
Notary Public - State of Illinois
My Commission Expires 4/30/2019

EXHIBIT "1"



B0625

**ILLINOIS DEPARTMENT OF CORRECTIONS**

## Authorization for Release of Offender Medical Health Information

**This Authorization may not be used for mental health or substance abuse treatment information (use form DOC 0240)**

The Department of Corrections will not condition treatment on this authorization. If authorizing disclosure to persons or organizations that are not health plans, covered health care providers or health care clearinghouses subject to federal health information privacy laws, they may further disclose the protected health information. However, genetic testing or HIV/AIDS information disclosed pursuant to this authorization may not be further disclosed except pursuant to authorization.

I hereby authorize ___STATEVILLE CORRECTIONAL CENTER___ to release the following information: (State
Facility
specific medical health information to be disclosed including date(s) or date range)

_All documents pertaining to my optometrist file of 2018._
_Including but limited to request, written reports, referrals and denials,_
_request for outside specialist off-site treatment, Utilization management_
_approval for UIC optometrist appointments and Medical Director & LHSA notes_
_including written scheduled appointments._

☑ At Request of Offender and/or: _____
Purpose of disclosure

from the records of _B 89413_    _Kely Achuckle_
ID#                              Print Offender's Name

to: ☑ Self  ☐ Authorized Attorney  ☐ Health Care Facility  ☑ Other: _Legal_

Name: _Kely Achuckle_
Print Name

Address: _Stateville Correctional Center P.O. Box 112_
Street Address
_Joliet_                    _IL_    _60434_
City                        State   Zip Code

I hereby release and hold harmless, the State of Illinois, the Department of Corrections, and its employees from any liability which may occur as a result of the disclosure or dissemination of the records or information contained therein resulting from the access permitted to the authorized attorney, health care facility, other as specified, or self. Records disclosed may contain confidential medical information including HIV disease information. I understand that I have the right to revoke this authorization at any time prior to disclosure by giving written notice (witnessed by someone who knows my identity) to the prison Facility Privacy Officer.

DEC 2 8 2018
BY:_____

**Expiration:** This authorization will expire (complete one):

☑  45 days from date of signature

☐  Upon the occurrence of the following event (must relate to the individual or purpose of the authorization):

_____

**Signature:**

_Kely Achuckle_                    _Self_                    _9-26-18_
Signature of Offender or Person Authorized to Consent      Relationship            Date

Give Offender a copy if DOC made the request for release.

Distribution:  Offender's Medical File

*Printed on Recycled Paper*

DOC 0241 (Rev. 01/2005)



Bruce Rauner
Governor

John Baldwin
Acting Director



**The Illinois Department of Corrections**

Stateville Correctional Center
Route 53, P.O. Box 112 • Joliet, IL 60434 • (815) 727 -3607 TDD: (800) 526-0844

**Date:** December 8, 2018

**To:** Mr. Kely Arbuckle

**From:** Medical Records

On today's date, I received copies of my requested medical health records.
Enclosed are eight pages.

_____
**Signature of Inmate**

_____
**Inmate Number**

EXHIBIT -2

*Mission: To serve justice in Illinois and increase public safety by promoting posit
offender behavior, operating successful reentry programs, and reducing victi*

**www.illinois.gov/idoc**



Kely ArBuckLE #B-89413
StateVille CorrectioNal Center
P.o. Box 112
Joliet, ILLiNois 60434

**RECEIVED**

MAR 0 8 2019

**ADMINISTRATIVE
REVIEW BOARD**

February 27ᵀᴴ, 2019

TO: Administrative Review Board — S. BeNToN
P.o. Box 19277
Springfield, ILLiNois 62794-9277

Re: uNAvailability of Grievance Procedures at (StateVille)

Dear S. BeNToN—ARB;

I CAN ONLY exhaust The "administrative remedies" That
are "available" To me. See; Pavey v. CoNley, 544 F.3d 739,
742 (7ᵀᴴ Cir. 2008); Dale V. Lappin, 376 F.3d 652, 656 (7ᵀᴴ Cir.
2004); Pozo v. McCaughTry, 286 F.3d 1022, 1024-25 (7ᵀᴴ Cir. 2002)

<u>First</u>. The grievance procedure, as set forth in The
ILLiNois Administrative Code, Provides That any inmate shall
first attempt To resolve The issue with his or her Counselor,
(If) The issue cannot be resolved with The Counselor (or) if
grievance pertains To a disciplinary proceeding, The inmate
may file a written grievance within Sixty days of The
incident. See; 20 ILL. AdmiN. Code 504.810 (a).

— (Keeping This <u>first-stage</u> in mind.)

— I Filed (AppeNdix "-1") (with "Exhibits" <u>Attached</u>) oN
(12-12-18,) by placing it in The "BLue Grievance
Box" in "Bravo-House",

— I Literally watched (Williams) Take The "Grievances"
ouT of The Grievance Box 2-days Later oN Friday (12-14-18,)

—) —

**EXHIBIT** -3"



— ON January 6th, 2019 I wrote (Colleen M. Franklin) Correctional Counselor II, regarding The Fact I had NOT Received My "Grievance Number" ox "Receipt" For The (12-12-2018 Grievance) — I Received NO Response.

**RECEIVED**

MAR 0 8 2019

ADMINISTRATIVE
REVIEW BOARD

On January 23rd, 2019 I Again wrote (Colleen M. Franklin) with a proof/certificate of service with An Attached Letter; see: (Appendix-"2") Again, NO Response.

— ON January 22nd, 2019 I wrote The (Brow-House, 6-Gallery Counselor) inquiring Why I had NOT Received My "Grievance Number and Receipt," and To Check on The "Status" of The Grievance. (see: Appendix-"3")

— ON January 26th, 2019, (Counselor Jackson) responded, That it "was most Likely Considered a "Medical-Issue", which means The HCU handles Those directly, and when a response is given by Them, They will send it directly back To you", etc, etc, See; (Appendix-"4")

**Thus**, I have made "Multiple-Attempts" To Resolve This Through The (Counselor) and Through The ("Grievance-Counselor") who "picks up" and "processes" The Grievances— All TO NO Avail. — — **Further**, (Taking Counselor Jackson's) statement as True, The Grievance was Forwarded To The "Grievance Office" and "HCU", in Accordance With 20 Ill. Admin. Code 504.830 (d) They are To Respond With findings and recommendations within Two months (60days) of The



③

36.

Receipt of The written grievance. -- They are (beyond) The Time-Limits of Responding To The Grievance in Accordance with 20 ILL Admin. Code 504.810 Through 504.850 Therefore, (Neither) The (Grievance Officer Report), NOR, The (Chief Administrative Officers) Response is Available To me,

— And This (Director's Review) Through The (Administrative Review Board) is The Last-Available-Administrative-Remedy. — Please Respond within The Time-frame of 20 ILL. Admin. Code 504.850.

END OF RESPONE TO ARB

Respectfully,

Kely Arbuckle

KELY ARBUCKLE #B-89413
STATEVILLE Correctional Center-
P.O. Box 112
JOLIET, ILLINOIS 60434

cc: file/KA.

Attachments: (Appendix 1-4)

RECEIVED
MAR 08 2019
ADMINISTRATIVE
REVIEW BOARD

—3—

④

ILLINOIS DEPARTMENT OF CORRECTIONS

**OFFENDER'S GRIEVANCE**

| Date: 12-12-18 | Offender: (Please Print) Kely Arbuckle | ID#: B 89413 |
|---|---|---|
| Present Facility: Stateville Correctional Center | Facility where grievance issue occurred: Stateville Correctional Center | |

**NATURE OF GRIEVANCE:**

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ ADA Disability Accommodation

☐ Staff Conduct    ☐ Dietary    ☒ Medical Treatment    ☐ HIPAA

☐ Transfer Denial by Facility    ☐ Transfer Denial by Transfer Coordinator    ☐ Other (specify): _____

☐ Disciplinary Report: ___/___/___      _____
     Date of Report          Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

    **Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
    **Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
    **Chief Administrative Officer,** only if EMERGENCY grievance.
    **Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
    administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
    Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information
for each person involved):

On February 21, 2018 I went for my annual "Offender Optometric examination" and saw Optometrist (Timothy J. Fahy, OD.) – Dr. Fahy determined after thorough examination that (I) had "Progressive Myopia" and astigmatism – and recommended consideration of contact lenses to improve VA and suppress Myopia Progression with a referral to UIC Contact len's Clinic for "Evaluation & Contact fitting" See Attached (EXHIBIT "A")

Relief Requested: Provide the treatment prescribed by (Dr. Timothy J. Fahy) on Febrary 21, 2018 and compensate Grievant for any Further "Vision-Loss" Due to (Dr. Garcia) and (Dr. Okezies) deliberate Indifference to serious medical needs.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Kely Arbuckle      B 89413      12-12-18
Offender's Signature          ID#          Date

**RECEIVED**

(Continue on reverse side if necessary)

MAR 08 2019

ADMINISTRATIVE

| **Counselor's Response (if applicable)** | |
|---|---|
| Date Received: ___/___/___ | ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to: Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |

Response: _____

_____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

| **EMERGENCY REVIEW** | |
|---|---|
| Date Received: ___/___/___ | Is this determined to be of an emergency nature?    ☐ Yes; expedite emergency grievance ☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |

Chief Administrative Officer's Signature          ___/___/___ Date

(APPendix —1)

— Further Dr. Fahy made a "Referral" to the "UIC Contact Lens Clinic on February 21, 2018 See Attached (EXHIBIT "B")

— On February 27th, 2018 - Wexford Health Sources Incorporated', Utilization Management, Approved and Authorized the out patient visit to "UIC Contact Lens Clinic" And "Gave Notice" of the Authorization ID: 786547127 to the site medical Director & HSA (see Attached: EXHIBIT "C") -- the appointment at "UIC Contact Lens Clinic" was scheduled for (July 13th, 2018) see Attached (EXHIBIT "C")

— (Dr. Rozel Elazegui, MD) the Site Medical Director Noted the "Collegial Review" (approval) to the "Contact Lens Clinic" at UIC for "evaluation" and "Contact fitting" See Attached : (EXHIBIT "D")

— In Mid-May 2018 Grievant spoke to "Nurse Cara" who schedules Optometrist appointments in the Health Care Unit, and I inquired about whether or not I was approved to go to UIC for evaluation and contact lens fitting-- Nurse Cara checked my medical file and said that Wexford had (approved) the UIC Appointment to the UIC Contact Lens Clinic and that she couldn't tell me the Exact-Date, but it was "already scheduled" and I would be sent to UIC within 60-days from that date.

— After Mid-July Grievant again - spoke to "Nurse Cara" and told her, I still haven't been sent out to "UIC" to the Contact Lens Clinic, so "Nurse Cara" again checked the medical files, and came back and told me I should have been taken to "UIC" on July 13th, 2018, but that did not occur --- So "Nurse Cara" said she would bring it to the Attention of the Medical-Director, and they would "Re-Schedule" the appointment as soon as possible.



— Further Dr. Fahy made a "Referral" to the "UIC Contact Lens Clinic on February 21, 2018 See Attached (EXHIBIT "B")

— On Febraury 27th, 2018 - Wexford Health Sources Incorporated, Utilization Management, Approved and Authorized the out patient visit to "UIC Contact Lens Clinic." And "Gave Notice" of the Authorization ID: 786547127 to the site medical Director & HSA (see Attached: EXHIBIT "C") -- the appointment at "UIC Contact Lens Clinic" was scheduled for (July 13th, 2018) see Attached (EXHIBIT "C")

— (Dr. Rozel Elazegui, MD) the Site Medical Director Noted the "Collegial Review" (approval) to the "Contact Lens Clinic" at UIC for "evaluation" and "Contact fitting" See Attached: (EXHIBIT "D")

— In Mid-May 2018 Grievant spoke to "Nurse Cara" who Schedules Optometrist appointments in the Health Care Unit, and I inquired about whether or not I was approved to go to UIC for evaluation and contact lens fitting-- Nurse Cara checked my medical file and said that Wexford had (approved) the UIC Appointment to the UIC Contact Lens Clinic and that she couldnt tell me the Exact-Date, but it was "already scheduled" and I would be sent to UIC within 60-days from that date.

— After Mid-July Grievant again - spoke to "Nurse Cara" and told her, I still havent been sent out to "UIC" to the Contact Lens Clinic, so "Nurse Cara" again checked the medical files, and came back and told me I should have been taken to "UIC" on July 13th, 2018, but that did not occur -- So "Nurse Cara" said she would bring it to the Attention of the Medical-Director, and they would "Re-Schedule" the appointment as soon as possible.

— During the week of July 25th, 2018, and not being told anything, Grievant stopped "Nurse Page" while she was passing out medication and I asked her to see if my appointment to "UIC Contact Lens Clinic" for "evaluation" and "Lens fitting" had been re-scheduled-- she said she would check on it, but didn't get back with me.

— On August 3rd, 2018 after Grievant "voiced Concerns" and "made multiple inquiries" about not being sent to a "scheduled Appointment" to "UIC Contact Lens Clinic" for "evaluation" and "Contact-fitting"-- (Dr. Okezie) then Contacts (Dr. Garcia) in Collegial-Review to see if it was ok to "cancel" the authority to send Grievant to "UIC Contact Lens Clinic" for "evaluation" and "Contact-fitting" --Thus, "Noting" this collegial-Review on 8-3-18. See Attached: (EXHIBIT "E")

— On August 7th, 2018 Wexford Health Sources, Inc. "Notified" the (Site Medical Director & HSA) that in the July 31, 2018 collegial between Dr. Garcia and Dr. Okezie, they had Authority to cancel Authority to UIC per (Dr. Garcia). See Attached: (EXHIBIT "F")

— This Cancellation was done without (any) "examination" or "Being Seen" by any other (Optometrist) to "eliminate" or "Assess findings" Contrary to (Dr. Timothy J. Fahy, OD) "Original Assessment" and necessity for an off-site "evaluation and "Contact-fitting" Due to "progressive myopia" and astigmatism".

— On August 8th, 2018 -- (Dr. Timothy J. Fahy, OD) Noted that patient had been denied Contact Lenses, and to re-evaluation of Refraction in 12 months. See Attached: (EXHIBIT "G")

RECEIVED
MAR 0 8 2019
ADMINISTRATIVE REVIEW BOARD

— On August 30th, 2018 Grievant signed up for sick-call because, no-one had informed him "why" he had not been taken out to "UIC", and (Nurse Page), after she reviewed the medical-chart, she told Grievant that he was not approved for contact lenses due to not being medically necessary and she will refer to on-site Optometrist for explanation (EXHIBIT-"H")

— As of todays date, Grievant has not seen an on-site optometrist, who is the same optometrist who made the UIC-Referral to begin with, due to "Progressive Myopia" and "Astigmatism."

— The Eighth and Fourteenth Amendments to the U.S. Constitution gives convicted inmates the right to adequate medical care. See: Estelle V. Gamble, 429 U.S. 97, 97 S. ct. 285 (1976) — The ("delay") or ("denial of") medical care may result in pain and suffering which no one can suggest would serve any penological purpose. — — This means that Wexford Health Services Inc. Through (Dr. Garcia) and (Dr. Okezie) after the prior Approval of a "UIC Contact Lens Clinic" "Appointment and Scheduling" (for) "evaluation" and "lens fitting" Due to "progressive Myopia" and "Astigmatism" to improve VA and suppress myopia progression, which is a serious medical need, are deliberately indifferent to this serious medical need and to delay this "prescribed and Approved" treatment for 12-more months will cause additional harm by "Further loss of eyesight" which will worsen. This is a serious medical need and "has been diagnosed by a physician (optometrist) as mandating treatment" to "Suppress myopia progression." — — A second medical need exist when "the Failure to treat a prisoners condition could result in further significant injury or the unnecessary and wanton infliction of pain. See: Mahan V. Plymouth County House of Corrections, 64 F.3d 14, 18 (1st Cir. 1995); Kosilek V. Maloney, 221 F.Supp.2d 156, 181 (D.Mass. 2002); Gutierrez V Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)

RECEIVED
MAR 08 2019
ADMINISTRATIVE
REVIEW BOARD

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

Here, (Dr. Garcia) and (Dr. Okezie)'s deliberate
indifference to Grievants serious medical needs are
likely to injure Grievant in the future. See: e.g.,
Blackmore V. Kalamazoo County, 390 F.3d 890, 895
(6th Cir. 2004); Geobert V. Lee County, 510 F.3d 1312,
1326 (11th Cir. 2007) -- the Constitution prohibits
officials from "intentionally denying or delaying
access to medical care or intentionally interfering
with the treatment once prescribed". Estelle V.
Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285(1976).
Thus, after an (Approved) "UIC Lens Clinic Scheduled
Appointment" for "Evaluation" and "Lens-fitting"
was missed, (Dr. Garcia) and (Dr. Okezie), without
"even seeing" or "examining" Grievant, took it
upon themselves — after the (Approved and scheduled)
UIC Appointment was "missed" on July 13, 2018 —
to "cancel" any "rescheduling" and made a
"determination" that this "prescribed treatment"
was not "medically-necessary" despite (Dr. Timothy
J. Fahy's) professional Judgement as the "Local-
optometrist" to Request the Appointment for
"Evaluation" and "Lens-fitting" Due to this
treatment being "medically necessary" to "suppress
Myopia Progression" and improve VA. As a result,
Grievant is suffering further "Vision-Loss" Due
to (Dr. Okezie) and (Dr. Garcia's) via Wexford Health
Sources Inc. "Collegial-Review" and deliberate
indifference to Grievants serious medical needs.

Additionally, (Not Attached to Original Grievance filed 12-12-18)
"Wexford Health Sources Inc." and its employee's,
i.e. facility Medical Director failed to adhere or
follow, and thus Violate Administrative Directive
04.03.123 (EXHIBIT "I") and 04.03.103
(EXHIBIT "J") Attached hereto

RECEIVED

MAR 08 2019

ADMINISTRATIVE
REVIEW BOARD



(4x)

E919

9

## ILLINOIS DEPARTMENT OF CORRECTIONS
### Offender Optometric Examination
Stateville Correctional Center

**RECEIVED**

MAR 0 8 2019

ADMINISTRATIVE
REVIEW BOARD

☐ Baseline  ☒ Annual

Date: 02,29,18

Time: 3:45   ☐ a.m.  ☒ p.m.

**Offender Information:**

Arbuckle (Last Name)   Kely (First Name)   MI

ID#: B89413

Chief Complaint: 1 yr F/U

| HPI: | | Ocular History: | |
|---|---|---|---|
| Location: | | ☐ Cataracts: | |
| Duration: | | ☐ Glaucoma: | |
| Onset: | | ☐ Disease: | |
| Severity: | | ☐ Trauma/Surgery: | |
| Timing: | | ☐ Strabismus: | |
| Modifiers: | | ☐ Amblyopia: | |

**Medical History:** ☐ NIDDM  ☐ IDDM  ☐ Hypertension  ☐ Other: _____

**Visual Acuity:** Uncorrected Distance: ☐ OD 20/  ☐ OS 20/  ☐ OU 20/
Uncorrected Near: ☐ OD 20/  ☐ OS 20/  ☐ OU 20/

Habitual Rx:  OD _____  20/ 40   Type: ☐ SV  ☐ Bifocal
OS _____  20/ 30   Date: __/__/__

Refraction:  OD −6.50 −3.00 ×15   20/ 5 −   Type: ☐ SV  ☐ Bifocal
OS −6.75 −3.00 ×10   20/ 25 − 20/25   Date: __/__/__

Near:  OD _____  20/   Type: ☐ SV  ☐ Bifocal
OS _____  20/   Date: __/__/__

| Pupils: | ☒ Bound | ☒ Equal | ☐ Responds to Light/Accommodation | ☐ APD | |
|---|---|---|---|---|---|
| Motilities: | ☒ Full | ☐ Abnormal | Confrontational Fields: 16 ☐ Full 15 ☐ Abnormal | | |
| Tonometry: | ☒ Applanation | ☐ Tonopen | ☐ NCT  OD 16  OS 15 | | Time: 4:10 P |

43.50 × 46.25
43.50 × 46.25

| Cover Test: | Distance | Near | Slit Lamp Exam: | WNL | ABNL |
|---|---|---|---|---|---|
| Eso | | | Cornea | RL | |
| Exo | | | Conjuctiva | | |
| Tropia | | | Iris/Ant. Chamber | | |
| Phoria | | | Lens | | |
| Ortho | | | Lids/Lashes | ✓ | |

| Ophalmoscopy: | WNL | ABNL | Right | Left | Method: |
|---|---|---|---|---|---|
| Disc | RL | | | | ☐ Direct |
| Vessels | | | | | ☐ BIO |
| Macula | | | cl | cl | ☒ 78D  9OD |
| Periphery | | | | | ☐ 3 mirror |
| Vitreous | | ✓ | | | ☐ Other: |

Cup to disc:  OD .4   OS .35   Cup Depth: ☐ Deep  ☒ Moderate  ☐ Shallow  ☐ PE 2.5%. Trop 1%

**Assessment/Plan:**
1. Annual Exam Complete Ocular Health assessment
2. NO Ocular Pathology Observed OU.
3. Referal to UIC Contact Lens clinic for Evaluation
4. & fitting
5.

**Medications Ordered:** _____

**Eyeglasses Ordered:** Frame: _____  Size: _____  Color: _____

Rx:  OD _____  Add: _____  Seg Height: _____
OS _____  ☐ SV  ☐ FT28  ☐ Reading Only  PD _____

Timothy J. Fahy, OD (Print Doctor's Name)   Timothy J. Fahy, OD (Doctor's Signature)   Follow-Up: POST UIC Contact Lens Clinic   Date

Distribution: Offender's Medical Record

DOC 0081 (Eff. 9/2002)

EXHIBIT - A



43

10

Auth# 20654712

ILLINOIS DEPARTMENT OF CORRECTIONS

## Medical Special Services Referral and Report

_____ STA _____
(Facility)

Offender's Name: Arbuckle, Kely          ID# B89413

Reason for Referral:
☐ Consult    ☐ Non-Formulary Medications    ☐ Medical Equipment
☐ Evaluation    ☐ Management
☐ Procedure/service (specify) _____
☐ Other (specify) _____

Urgent: ☐ Yes  ☒ No

Referred to: UIC Contact Lens Clinic

Rationale for Referral: Progressive myopia c̄ astigmatism
Consider contact lenses to improve VA & suppress
myopia progression

Timothy J. Fahy, OD          Timothy J. Fahy, OD          02-21-18
Print Referring Practitioner's Name     Referring Practitioner's Signature     Date

Report of Referral (Use Reverse Side, if necessary)

Findings: _____
_____
_____

**RECEIVED**

**MAR 08 2019**

Assessment: _____
_____

**ADMINISTRATIVE**
**REVIEW BOARD**

Recommendations/Plans: _____ see alt plan _____
_____
_____

Print Practitioner's Name          Practitioner's Signature          Date

Facility Medical Director Use Only
I have reviewed the recommendations and:

☐ Approve.

☐ Deny or revise as indicated on the Notification of Medical Service Referral Denial or Revision,
DOC 0255.

(EXHIBIT - B)

Print Facility Medical Director's Name          Facility Medical Director's Signature          Date

Distribution: Offender's Medical File, and          Page 1 of 1          DOC 0254 (Eff.4/2007)
if denied/revised, Health Care Unit Administrator          (Replaces DC 7105)



## WEXFORD HEALTH SOURCES INCORPORATED

To:      Site Medical Director & HSA

From:    Utilization Management                    DELIVERED FEB 2 8 2018

Date/Time: 02/27/2018 16:14:36

Subject:   Inmate Name:   ARBUCKLE, KELY Y
           Inmate Number: B89413
           Site:          STATEVILLE CC
           Service:
                          99202   OFFICE/OUTPATIENT VISIT NEW

Authorization ID: 786547127

Based upon a review of the information provided, Service is Approved.

Comments:
UIC Contact Lens Clinic Eval approved by Dr. Garcia after referral
review for a patient with progressive myopia and astimgatism.
Onsite optometrist recommending consideration of contact lenses to
improve VA and suppress myopia progression.  BCVA with glasses
20/30 and 20/40.

**Auth for Contact Lens Clinic Eval at UIC**

7·13

**RECEIVED**

MAR 0 8 2019
ADMINISTRATIVE
REVIEW BOARD

From: _____
      Dedicated Utilization Management

-------------------------------------------------------------------------

INFORMATION CONTAINED IN THIS DOCUMENT IS PRIVILEGED AND CONFIDENTIAL

Foster Plaza4 - 501 Holiday Drive - Pittsburgh, PA 15220
877-939-2884 or 800-353-8384 - Phone
                              412-937-9151 - Fax
WWW.WEXFORDHEALTH.COM



ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

Stateville Correctional Center

| Offender Information: | | |
|---|---|---|
| Arbuckle | | ID#: B89413 |
| Last Name | First Name | MI |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 2/21/18 9:30am | RNSC Note<br>S: "I need my meds renewed.<br>O: I/m A&O×3. speech clear and coherent. I/m requesting Rx renewal. Informed I/m will be placed on MDSC for further eval. I/m verbalized understanding.<br>A: Rx/RF | D-RNSC Q Ref<br>— MDSC 3/1/18 for further eval. |
| | Collegial review<br>Provider ___<br>Clinic ___ (√) Contact lens clinic<br>Approved √ Denied @ u/a.<br>Represent ___ Alt.Plan<br>→ onsite referral for evaluation & contact fitting. | Rozel Elazegui, MD |

RECEIVED
MAR 08 2019
ADMINISTRATIVE
REVIEW BOARD

Distribution: Offender's Medical Record

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

Printed on Recycled Paper

46

13

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

_____ Stateville Correctional _____ Center

Offender Information:

Arbuckle          Kely          B 89413

Last Name          First Name          MI     ID#:

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 8/3/18 | Collegial Review | |
| | Ai Progressive Myopia ~ Astiguatism | |
| | UIC Contact Lens discussion | |
| | Collegial review | |
| | Provider ___ optometrist | |
| | Clinic LACA | |
| | Approved Denied | |
| | Represent Alt.Plan | |
| | | PLAN |
| | | Referral to our Optometrist |
| | | okey |
| | RECEIVED | |
| | MAR 08 2019 | |
| | ADMINISTRATIVE REVIEW BOARD | |

EXHIBIT - E

Distribution: Offender's Medical Record

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

_Printed on Recycled Paper_



⑭

WEXFORD HEALTH SOURCES INCORPORATED

To:        Site Medical Director & HSA
From:      Utilization Management
Date/Time: 08/07/2018 11:49:18
Subject:   Inmate Name:  ARBUCKLE, KELY Y
           Inmate Number:  B89413
                    Site:  STATEVILLE CC
                 Service:
                    99202    OFFICE/OUTPATIENT VISIT NEW

Based upon a review of the information provided, it is my medical opinion that:

1.  The above requested service is not authorized at this time based on the
    following:


    Comments:
        Case discussed in 7-31-18 collegial between Dr. Garcia and Dr.
        Okezie.  UIC Contact Lens Clinic will not see patient due to
        contacts not being medically necessary.  Auth ok to cancel auth per
        Dr. Garcia.  Patient to continue wearing glasses.

    From:  ___C. r. Garcia_____
           Dedicated Utilization Management Physician

    -----------------------------------------------------------------------
2.___  Appeal Filed (Date/Time)
   a. Appeal Information




       _____
       Signature of Appellant


  From:_____
        Dedicated Utilization Management Physician

5.___  I want a second opinion of the alternate plan.
       Signature: _____ Date/Time:_____

6.___  I will re-consult upon completion of alternate medical plan, if indicated.
       Signature: _____ Date/Time:_____

        INFORMATION CONTAINED IN THIS DOCUMENT IS PRIVILEGED AND CONFIDENTIAL

        Foster Plaza 4 - 501 Holiday Drive - Pittsburgh, PA 15220
   877-939-2884 or 800-353-8384-Phone   412-937-9151 -Fax
           WWW.WEXFORDHEALTH.COM

(EXHIBIT
1
71.)

**RECEIVED**

MAR 0 8 2019

**ADMINISTRATIVE
REVIEW BOARD**



(15)

ILLINOIS DEPARTMENT OF CORRECTIONS
**Offender Optometric Examination**

Stateville Correctional Center

☐ Baseline   ☐ Annual

Date: 8, 8, 18

Time: 900   ☐ a.m. ☐ p.m.

**Offender Information:**

Last Name: Arbuckle   First Name: Kely   MI: ____   ID#: B89413

**Chief Complaint:** _____

| HPI: | | Ocular History: | |
|---|---|---|---|
| Location: | | ☐ Cataracts: | |
| Duration: | | ☐ Glaucoma: | |
| Onset: | | ☐ Disease: | |
| Severity: | | ☐ Trauma/Surgery: | |
| Timing: | | ☐ Strabismus: | |
| Modifiers: | | ☐ Amblyopia: | |

| Medical History: | ☐ NIDDM | ☐ IDDM | ☐ Hypertension | ☐ Other: |
|---|---|---|---|---|
| Visual Acuity: | Uncorrected Distance: | ☐ OD 20/ | ☐ OS 20/ | ☐ OU 20/ |
| | Uncorrected Near: | ☒ OD 20/ | ☐ OS 20/ | ☐ OU 20/ |

| Habitual Rx: | OD | | 20/ | Type: | ☐ SV | ☐ Bifocal |
|---|---|---|---|---|---|---|
| | OS | | 20/ | Date: / / | | |
| Refraction: | OD | | 20/ | Type: | ☐ SV | ☐ Bifocal |
| | OS | | 20/ | Date: / / | | |
| Near: | OD | | 20/ | Type: | ☐ SV | ☐ Bifocal |
| | OS | | 20/ | Date: / / | | |

| Pupils: | ☐ Round | ☐ Equal | ☐ Responds to Light/Accommodation | ☐ APD | |
|---|---|---|---|---|---|
| Motilities: | ☐ Full | ☐ Abnormal | Confrontational Fields: | ☐ Full | ☐ Abnormal |
| Tonometry: | ☐ Applanation | ☐ Tonopen | ☐ NCT   OD | OS | Time: |

| Cover Test: | Distance | Near | Slit Lamp Exam: | WNL | ABNL |
|---|---|---|---|---|---|
| Eso | | | Cornea | | |
| Exo | | | Conjuctiva | | |
| Tropia | | | Iris/Ant. Chamber | | |
| Phoria | | | Lens | | |
| Ortho | | | Lids/Lashes | | |

| Opthalmoscopy: | WNL | ABNL | Right | Left | Method: |
|---|---|---|---|---|---|
| Disc | | | | | ☐ Direct |
| Vessels | | | | | ☒ BIO |
| Macula | | | | | ☐ 78D |
| Periphery | | | | | ☐ 3 mirror |
| Vitreous | | | | | ☐ Other: |

Cup to disc:  OD ____   OS ____   Cup Depth: ☐ Deep   ☐ Moderate   ☐ Shallow   ☐ PE 2.5%. Trop 1%

Assessment/Plan:
1. Patient denied contact lenses. RTC in 12
2. months for re-evaluation of refraction
3. _____
4. _____
5. _____

Medications Ordered: _____

RECEIVED

MAR 08 2019

ADMINISTRATIVE
REVIEW BOARD

Eyeglasses Ordered:   Frame: ____   Size: ____   Color: ____

Rx:  OD ____   Add: ____   Seg Height: ____

OS ____   ☐ SV   ☐ FT28   ☐ Reading Only   PD ____

Timothy J. Fahy, OD   Timothy J. Fahy, OD

Print Doctor's Name          Doctor's Signature

Follow-Up: 12 months
Date

Distribution: Offender's Medical Record

DOC 0081 (Eff. 9/2002)

noted 8-8-15

**Offender Outpatient Progress Notes**

STATEVILLE CORRECTIONAL Center

Offender Information:

Last Name: Arbuckle  First Name: Kely  MI: ___  ID#: B89413

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 8/30/18 0830 | LPN Note<br>S: "What happened to my contact lenses the eye doctor ordered?"<br>O: Inmate is alert and oriented x3. Steady gait. No c/o discomfort at this time. Inmate inquiring about contact lenses that were ordered. After review of chart inmate was not approved for contact lenses due to not being medically necessary. Will refer to onsite OPT for explanation.<br>A: Contact Lenses | P: Inmate is to follow up c̄ OPT onsite. |

RECEIVED
MAR 08 2019
ADMINISTRATIVE
REVIEW BOARD

EXHIBIT - 1

D. Rogers

Distribution: Offender's Medical Record

Printed on Recycled Paper

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)



| **Illinois** Department of **Corrections** | **ADMINISTRATIVE DIRECTIVE** | Number | 04.03.123 |
|---|---|---|---|
| | | Page | 1 of 2 |
| | | Effective | 9/1/2002 |

| Section | 04 | Programs and Services |
|---|---|---|
| Subsection | 03 | Medical and Health Care |
| Subject | 123 | Offender Contact Lenses |

**RECEIVED**

MAR 0 8 2019

**ADMINISTRATIVE REVIEW BOARD**

**I.    POLICY**

**A.    Authority**

730 ILCS 5/3-2-2

**B.    Policy Statement**

The Department shall restrict the use of contact lenses to those offenders who have a medical need for such devices as determined by the facility Medical Director or the Agency Medical Director.

**II.    PROCEDURE**

**A.    Purpose**

The purpose of this directive is to establish uniform guidelines to ensure that the use of contact lenses among offenders is restricted to those individuals with a medical need or visual disturbance which cannot be effectively corrected with eyeglasses.

**B.    Applicability**

This directive is applicable to all adult Level One through Level Seven and juvenile Level One through Level Four correctional facilities within the Department.

**C.    Internal Audits**

An internal audit of this directive shall be conducted at least annually.

**D.    Definitions**

Medical need - includes cataract excision with aphakia, corneal scarring, visual defects that cannot be adequately corrected with eyeglasses because of corneal irregularities or other focusing defects, and other medical conditions defined by an ophthalmologist or optometrist which prevent adequate vision correction without the use of contact lenses.

**E.    Requirements**

1.    All offenders entering reception and classification centers who have contact lenses shall be identified and then evaluated within 30 days of arrival at their permanent facility for medical need for contact lenses.



(EXHIBIT "I")



*Illinois* Department of **Corrections**

| ADMINISTRATIVE DIRECTIVE | Effective 9/1/2002 | Page 2 of 2 | Number 04.03.123 |
|---|---|---|---|

2. Offenders who have no demonstrable medical need for contact lenses shall be referred to the optometrist or ophthalmologist for examination for replacement eyeglasses. Following the evaluation, eyeglasses shall be ordered and delivered to the offender upon receipt.

    a. While an offender is waiting for eyeglasses, contact lens solutions shall be made available for use through the Medical Unit at the offender's expense.

    b. Following receipt of the eyeglasses, the contact lenses shall be disposed of in accordance with Department Rule 535.

3. Offenders with a medical need for contact lenses shall be evaluated by an optometrist or ophthalmologist at least annually to determine the correctness of the current prescription and the condition of the lenses.

    a. All solutions and other necessities for the care and maintenance of medically indicated contact lenses shall be provided by the facility's Health Care Unit at no cost to the offender.

    b. Replacement lenses shall be provided at an appropriate schedule as determined by the prescribing optometrist or ophthalmologist.

    c. Offenders who require more frequent replacement because of improper handling of the lenses or through general carelessness shall be required to incur the cost of the replacement lenses. This should be determined on a case-by-case basis.

4. When there is a question about the medical need for contact lenses for a particular offender, all information from the examining ophthalmologist or optometrist and input from the facility's Medical Director shall be forwarded to the Office of Health Services. The final decision shall be made by the Agency Medical Director, forwarded to the facility's Medical Director, and filed in the offender's Medical Record.

Authorized by:

Donald N. Snyder Jr.
**Director**

Supersedes:
04.03.123A-J        AD        6/1/1994





| | Number | 04.03.103 |
|---|---|---|
| **Illinois** | Page | 1 of 6 |
| Department of **Corrections** | Effective | 4/1/2007 |

**ADMINISTRATIVE DIRECTIVE**

| Section | 04 | Programs and Services |
|---|---|---|
| Subsection | 03 | Medical and Health Care |
| Subject | 103 | Offender Health Care Services |

I. **POLICY**

 A. **Authority**

 730 ILCS 5/3-2-2, 5/3-6-2, and 5/3-7-2

 20 Ill. Adm. Code 415 and 504

 B. **Policy Statement**

 The Department shall ensure offenders have access to adequate health care.

**RECEIVED**

**MAR 08 2019**

**ADMINISTRATIVE REVIEW BOARD**

II. **PROCEDURE**

 A. **Purpose**

 The purpose of this directive is to establish a uniform procedure for the provision of health care services to offenders in correctional facilities.

 B. **Applicability**

 This directive is applicable to all adult Level One through Level Seven and juvenile Level One through Level Four correctional facilities within the Department.

 C. **Internal Audits**

 An internal audit of this directive shall be conducted at least annually.

 D. **Designees**

 Individuals specified in this directive may delegate stated responsibilities to another person or persons unless otherwise directed.

 E. **Definition**

 Chronic illness - those diseases as listed in accordance with Administrative Directive 04.03.105, and medical conditions that require long term follow up as determined by the medical director.

 HIV (Human Immunodeficiency Virus) - see Administrative Directive 04.03.115.

 Specialty Service - includes non-routine services and items including, but not limited to, off-site consultations, off-site x-rays, non-formulary medications, and medical equipment.



PLAINTIFF'S EXHIBIT J




*Illinois* Department of **Corrections**

| ADMINISTRATIVE DIRECTIVE | Effective 4/1/2007 | Page 2 of 6 | Number 04.03.103 |
|---|---|---|---|



**F. Requirements**

The Chief Administrative Officer shall develop a written procedure covering the provision of health care services within the facility. The procedure shall be dated and signed by the Chief Administrative Officer and the designated health care authority for the facility and approved by the Agency Medical Director. The procedure shall provide for the following.

1. **Direction**

    The health care services program shall be directed by a designated health authority whose scope of duties are detailed in a written agreement, contract, or job description that is reviewed annually and revised when necessary.

2. **Scope of Services**

    a. The method by which all offenders of a facility, regardless of custody status or other factors, can obtain health services at the level of self care, first-aid, emergency care, clinic care, infirmary care, and hospitalization shall be identified and described. (This may include the services provided by an outside or community hospital.)

    b. The method for providing a health education program, health maintenance program, chronic and convalescent care, continuing care, and emergency care shall be identified and described.

3. **Offender Access**

    a. All offenders shall have daily access to health care personnel and be referred to a facility physician, physician's assistant, or nurse practitioner as needed.

    b. Offenders shall be referred for specialty services if determined medically necessary.

    (1) If a facility physician, physician's assistant, or nurse practitioner deems specialty services necessary, a Medical Specialty Service Referral and Report, DOC 0254, shall be submitted to the facility Medical Director.

    (2) The facility Medical Director shall review the referral and make a determination and:

    (a) If denied, shall be forwarded to the facility Health Care Unit Administrator for a Utilization Review in accordance with Administrative Directive 04.03.125.

    (b) If approved, submit the referral to the Utilization Management Unit of the facility's health care vendor. The referral may be made in writing or verbally through a collegial review. Verbal reviews shall be documented on the progress notes in the offender's medical record.

RECEIVED

MAR 08 2019

ADMINISTRATIVE
REVIEW BOARD

*Illinois* Department of *Corrections*

| ADMINISTRATIVE DIRECTIVE | Effective | 4/1/2007 | Page | 3 of 6 | Number | 04.03.103 |
|---|---|---|---|---|---|---|

(c) The vendor's Utilization Management Unit will review the referral and must submit a written response to the facility Medical Director within five working days.

  i. If the response is not received within the five working days, the facility Medical Director shall advise the Health Care Unit Administrator who shall contact the Agency Medical Director.

  ii. The response shall be placed in the consultation section of the offender's medical file.

  iii. If the referral is approved, the facility Medical Director shall ensure services are scheduled and the course of treatment is initiated.

  iv. If the referral is denied, the facility Medical Director shall forward the referral to the facility Health Care Unit Administrator for a Utilization Review in accordance with Administrative Directive 04.03.125.

(3) If approved, health care staff shall schedule the pending specialty service.

(4) If denied, the facility Medical Director shall notify the offender in writing on the Medical Special Services Referral Denial or Revision, DOC 0255.

**NOTE:** Any member of the staff responsible for offender's care may request a Utilization Appeal directly to the Agency Medical Director in all cases of denials from the vendors Utilization Management Unit.

c. Offender shall be offered testing for HIV and related counseling by medical personnel upon arrival at the parent institution following transfer from reception and classification and again prior to transfer to a transition center or prior to release, discharge, or parole. Consent for testing or refusal shall be documented on the DOC 0215.

d. Health care personnel shall conduct rounds in segregation or confinement units daily to ensure adequate offender access.

e. A physician, physician's assistant, or nurse practitioner shall make rounds in the segregation or confinement units at least once per week.

4. **Offender Notification**

a. Offenders shall be informed of the following:

  (1) All offenders may participate in sick call; and

RECEIVED

MAR 08 2019

ADMINISTRATIVE REVIEW BOARD





55

21

(2) The procedures for gaining access to health services and for filing a complaint regarding health services.

b. In the event the offender does not understand English, he or she shall be informed of the foregoing in a language that he or she understands.

5. **Medical Treatment**

a. When an offender is incapable of giving consent, medical treatment, including medication, may be given against an offender's will where approved by the Chief Administrative Officer or the Duty Administrative Officer (no designees) when in the opinion of an Illinois licensed physician immediate treatment is required:

(1) To protect the offender from a physical condition threatening to cause death, damage or impairment of bodily functions, or disfigurement, and the offender is incapable of giving consent.

(2) Where death of the offender or serious permanent bodily injury is likely to result in the near future if treatment is not provided.

b. The physician's opinion and recommendation and the Chief Administrative Officer's or the Duty Administrative Officer's approval shall promptly be documented on an Offender Medical Emergency Consent Waiver, DOC 0095, and placed in the offender's medical record.

c. The involuntary administration of psychotropic medication shall comply with Department Rule 415.70. The physician's opinion and order shall be documented on an Emergency Involuntary Administration of Psychotropic Medication, DOC 0097, and placed in the offender's medical record.

6. **Review of Sick Call Requests**

a. Health care staff shall review offender sick call requests within 24 hours of receipt. Medical emergencies shall be addressed as they occur.

b. Upon determination that a nursing evaluation is appropriate, health care staff shall schedule an evaluation. The evaluation shall take place within three days.

7. **Co-Payment for Non-emergency Medical Services in Adult Facilities**

a. Offenders in adult facilities who request non-emergency treatment shall pay the Department a $2.00 co-pay per visit. Services are non-emergency services when requested by the offender and determined to be non-emergent by the examining medical personnel such as a Certified Medical Technician, Dentist, Mental Health Professional, Nurse, Nurse Assistant, Physician, or Physician's Assistant. An offender who has been diagnosed with a chronic illness shall be exempt from the $2.00 co-pay for treatment of the chronic illness at the regularly scheduled chronic illness clinic visit.

RECEIVED
MAR 08 2019
ADMINISTRATIVE REVIEW BOARD

*Illinois Department of* **Corrections**

| ADMINISTRATIVE DIRECTIVE | Effective 4/1/2007 | Page 5 of 6 | Number 04.03.103 |
|---|---|---|---|

b. At the time of the non-emergency evaluation, the offender shall be required to sign an Offender Authorization for Payment, DOC 0296, authorizing the deduction of the co-pay from present or future funds in his or her trust fund account. Justification for the co-pay shall be documented in the progress notes. Indigent offenders as defined in 20 Ill. Adm. Code 415.30 shall be exempt from the co-payment.

c. When the evaluation is provided, the Health Care Unit shall submit the DOC 0296 to the business office for processing in accordance with Administrative Directive 02.42.105.

8. **Health Care Planning for General Population Offenders**

a. Health care staff shall identify offenders who have health conditions that require health care planning.

b. Prior to release from the facility, health care staff shall complete health care planning for each offender as indicated and offer counseling and testing for HIV free of charge.

c. To ensure no interruption in the treatment of offenders being released, discharged, or transferred to a transition center, health care staff shall either:

   (1) Provide a two week supply of the medication and a prescription for an additional two week supply; or

   (2) Make an appointment on behalf of the offender with the appropriate specialty in the community and provide the offender with the quantity of medication that will supply the offender until said appointment.

d. If medication is released in a non-child resistant package, health care staff shall ensure:

   (1) A sticker stating "Package NOT child resistant" is affixed to the package.

   (2) The Child Resistant Packaging Waiver, DOC 0145, is completed and the offender signs or the offender's refusal to sign is documented.

   (3) The medication is released to the offender. Refusal to sign the DOC 0145 shall not prevent release of medication.

e. Following completion of the health care planning, a note shall be placed:

   (1) On the Offender Medical Problem List, DOC 0088, indicating that health care planning has been completed.

   (2) In the progress notes describing the health care plan and indicating that the plan was discussed with the offender.

RECEIVED

MAR 08 2019

ADMINISTRATIVE REVIEW BOARD



57

*Illinois Department of* **Corrections**



| ADMINISTRATIVE DIRECTIVE | Effective | | Page | | Number | |
|---|---|---|---|---|---|---|
| | | 4/1/2007 | | 6 of 6 | | 04.03.103 |

f.     The Health Care Planning portion of local procedures shall be reviewed, and revised and re-approved annually at the time of the Quality Improvement Committee Meeting as described in Administrative Directive 04.03.125.

9.     **Review of Health Complaints**

     a.     Reports of health problems or other medical complaints made by offenders shall be reviewed within 24 hours, or immediately in the event of an emergency, by designated trained staff. Appropriate referrals to scheduled or unscheduled health services shall be made as needed.

     b.     When an offender request for non-emergency medical attention results in referral to a primary care physician by the screening medical personnel, the primary care evaluation shall take place within 72 hours or upon the next scheduled visit by a primary care physician.

Authorized by:

Roger E. Walker, Jr.
**Director**

<u>Supersedes</u>:
04.03.103          AD          1/1/2006



RECEIVED

MAR 0 8 2019

ADMINISTRATIVE
REVIEW BOARD

58
File Copy

(24)

IN THE

Circuit Court of Will County

Kely Arbuckle #B-89413
Plaintiff/Petitioner

Vs.
Colleen M. Franklin
Correctional Counselor 11
Defendant/Respondent

No._____

)
)
)
)
)
)

## PROOF/CERTIFICATE OF SERVICE

TO: Colleen M. Franklin
Correctional Counselor II
Stateville Correctional Center

TO:_____
_____
_____
_____

PLEASE TAKE NOTICE that on ___January 23___, 20 _19_, I placed the
attached or enclosed documents in the institutional mail
at ___Stateville___ Correctional Center, properly addressed to the
parties listed above for mailing through the United States Postal Service (Request of
Grievance number and receipt and copy of Grievance)(Letter Attached)

DATED: _1-23-19_

/s/ Kely Arbuckle
Name: /Kely Arbuckle
IDOC#: /B-89413
Address: Stateville C.C.
P.O. Box 112
Joliet, IL 60434

OFFICIAL SEAL
RALPH BURKYBILE
Notary Public - State of Illinois
My Commission Expires 5/13/2020

Subscribed and sworn to before me this _23_ day of _JANUARY_, 20 _19_.

_____
Notary Public

RECEIVED

MAR 0 8 2019

ADMINISTRATIVE
REVIEW BOARD

(Appendix - 2)



(25)

Dear Colleen M. Franklin Correctional Counselor II    Jan. 23, 2019

On Jan. 6, 2019 I wrote you concerning my Grievance number and receipt of my Dec. 12, 2018 Grievance concerning the cancelation of my UIC appointment for evaluation & lens fitting due to progressive myopia & astigmatism to improve VA and supress myopia progression.

I again am asking to receive my grievance number and receipt, and a copy of my grievance

Thank You for Your Time

Kely Arbuckle

Kely Arbuckle #B-89413
Bravo House Cell: 625

P.S. If for whatever reason you fail to respond to this in 10 working days, I will consider the initial stage of this grievance process unavailable

**RECEIVED**

MAR 08 2019

ADMINISTRATIVE
REVIEW BOARD

60

26

Dear Bravo House & Gallery Counselor     Jan. 23, 2019

On Dec. 12, 2018 I filed and placed
in the Grievance (blue) box, a grievance
Concerning the cancelation of UIC appointment for
evaluation # lens fitting due to progressive
myopia # astigmatism to improve VA and suppress
myopia progression. On Jan. 6, 2018 I wrote
the grievance counselor stating I needed
my grievance # and receipt and still have
not received my response.
Could you please check into why I have
not received my grievance # or receipt
for my grievance and the current status
of the response to my grievance

Thank You for You Time

Kelly Arbuckle

Kelly Arbuckle #B 89413
Bravo House
Cell: 625

RECEIVED

MAR 0 8 2019

ADMINISTRATIVE
REVIEW BOARD

File Copy

(Appendix - 3)

61

27

1/26/19

Mr. Arbuckle,

got your note request-
ting information on
the grievance you sent
on 12/12/2018. It has
not come to my desk
but most most likely
considered a "Medical"
issue, which means the
HCU handles those directly.
When a response is →

(over)

RECEIVED

MAR 08 2019

ADMINISTRATIVE
REVIEW BOARD

(Appendix - 4)



28

is given by them,
they will send it
directly back to you,
and a copy will be
made and placed in
your "Master" file.
Unfortunately it takes
a long time for them
to answer due to the
volume of grievances.

Counselor
Jackson

RECEIVED

MAR 08 2019

ADMINISTRATIVE
REVIEW BOARD



63

**ILLINOIS DEPARTMENT OF CORRECTIONS**

**Administrative Review Board**
**Return of Grievance or Correspondence**

Bl 25

Offender: Arbuckle, Kely _____ B89413

Last Name _____ First Name _____ MI _____ ID#

Facility: Stateville _____

☒ Grievance: Facility Grievance # (if applicable) _____ Dated: 12/12/18 or ☐ Correspondence: Dated: _____

Received: 3/8/19 Regarding: Myopia IX, UIC Contacts,

Date _____ since Feb 2018

all cancelled aug 2018

The attached grievance or correspondence is being returned for the following reasons:

---

**Additional information required:**

☐ Provide your original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely.

☐ Provide dates when incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to:
Administrative Review Board, Office of Inmate Issues, 1301 Concordia Court, Springfield, IL 62794-9277

---

**Misdirected:**

☐ Contact your correctional counselor or Field Services regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☒ Personal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns in a letter to: Illinois Prisoner Review Board, 319 E. Madison St., Suite A, Springfield, IL 62706

---

**No further redress:**

☐ Award of Earned Discretionary Sentence Credit is a discretionary administrative decision; therefore, this issue will not be addressed further.

☐ Administrative transfer denials are discretionary administrative decisions; therefore, this issue will not be addressed further.

☒ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ Administrative Review Board received the appeal 30 days past date of Chief Administrative Officer's decision; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____
Date

☐ No justification provided for additional consideration.

---

Other (specify): failure to meet IX 504F no Review. No facility Responses.

Completed by: Sherry Benton _____ S. Benton _____ 3/8/19

Print Name _____ Signature _____ Date

Distribution: Offender
Inmate Issues

*Printed on Recycled Paper*

EXHIBIT - 4

3/2018)



IN THE

Circuit Court of Will County

Kely Arbuckle #B-89413
Plaintiff/Petitioner

          )
          )
          )
Kelly Vs. Ledford          )          No._____
Office Coordinator          )
Defendant/Respondent          )

PROOF/CERTIFICATE OF SERVICE

TO: Kelly Ledford                    TO: _____
Office Coordinator                        _____
_____                        _____

PLEASE TAKE NOTICE that on March 9th, 20 19. I placed the
attached or enclosed documents in the institutional mail
at Stateville Correctional Center, properly addressed to the
parties listed above for mailing through the United States Postal Service (Request of
Grievance number and receipt and current status)

DATED: March 09, 2019          /s/ Kely Arbuckle
                                Name: Kely Arbuckle
                                IDOC#: B-89413
                                Address: Staville Correctional Center
                                          P.O. Box 112
                                          Joliet, IL 60434

```
OFFICIAL SEAL
RALPH BURKYBILE
Notary Public - State of Illinois
My Commission Expires 5/13/2020
```

Subscribed and sworn to before me this 9 day of March 20 19

_____
Notary Public

EXHIBIT -"5"

65

Dear Kelly Ledford, Office Coordinator          March 7th, 2019

I notified Collen M. Franklin via institutional mail on January 6, 2019 Concerning my Grievance number and receipt of my December 12, 2018 Grievance concerning the cancelation of my UIC appointment for evaluation & lens fitting due to progressive myopia & astigmatism to improve VA and suppress myopia proggession. I again notified Ms. Collen M. Franklin via Institutional mail on January 23, 2019 that I have not yet received the Grievance number and receipt to my December 12, 2018 Grievance.

To this day, Ms. Kelly Ledford, I have not received any word on what the current status is on this Grievance, let alone the Grievance number or receipt. Could you, being the "Office Coordinator", help me locate this Grievance number and receipt. My Counselor, Bravo House 6 Gallery "Jackson", has notified me on January 26, 2019, that he has not had the grievance come across his desk and the grievance was most likely considered medical and sent to the "HCU" which handles them directly and that it takes them a long time to respond due to the volume of grievances.

1 of 2



(66)

This response from my Counselor did not answer my question about my December 12, 2018 grievance "number" and "receipt." He has been too lazy and incompetent to find out what the grievance number is and to provide the number, which is his job as a Counselor, when it has been brought to his attention that I have not received a grievance number or receipt. But instead he just wants to spin me.

So I am reaching out to you to help resolve this issue of my grievance number and receipt, and also the current status of this December 12, 2018 grievance.

Thank You For Your Time

Kely Arbuckle
Kely Arbuckle #B-89413
Bravo House Cell: 625

I Have Searched Our Logs and We do not Have a December 2018 grievance of this type.
K. Ledford

2 of 2



# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | B89413 | **Counseling Date** | 03/13/19 14:41:23:647 |
| **Offender Name** | ARBUCKLE, KELY Y. | **Type** | Personal |
| **Current Admit Date** | 04/25/2014 | **Method** | Face To Face |
| **MSR Date** | 03/16/2128 | **Location** | STA  UNIT B |
| **HSE/GAL/CELL** | B -06-25 | **Staff** | FRANKLIN, COLLEEN M., Correctional Counselor II |

*****Late entry***** RECEIPT OF GRIEVANCE ON __1/7/19__ CONCERNING MEDICAL ISSUES.  THIS GRIEVANCE HAS BEEN ASSIGNED GRIEVANCE #_7688__.  A copy of your medical grievance has been forwarded to the HCU for review and response. You will receive a final response from the Grievance Office when the HCU responds to same.

EXHIBIT -"6"

(51)  (4)

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

| Date: 12-12-18 | Offender: (Please Print) Kely Arbuckle | ID#: B 89413 |

| Present Facility: Stateville Correctional Center | Facility where grievance issue occurred: Stateville Correctional Center |

**NATURE OF GRIEVANCE:**

☐ Personal Property  ☐ Mail Handling  ☐ Restoration of Good Time  ☐ ADA Disability Accommodation
☐ Staff Conduct  ☐ Dietary  ☒ Medical Treatment  ☐ HIPAA
☐ Transfer Denial by Facility  ☐ Transfer Denial by Transfer Coordinator  ☐ Other (specify): _____

☐ Disciplinary Report: ___/___/___
Date of Report                    Facility where issued

Note:     Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

On February 21, 2018 I went for my annual "Offender Optometric examination" and saw Optometrist (Timothy J. Faby, OD.) - Dr. Faby determined after thorough examination that (I) had "Progressive Myopia" and astigmatism - and recommended consideration of contact lenses to improve VA and suppress Myopia Progression with a referral to UIC Contact Lens Clinic for "Evaluation & Contact Fitting" See Attached (EXHIBIT "A")

Relief Requested: Provide the treatment prescribed by (Dr. Timothy J. Faby) on February 21, 2018 and compensate Grievant for any Further "Vision Loss" Due to (Dr. Garcia) and (Dr. Okezies) deliberate indifference to serious medical needs.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Kely Arbuckle                     B 89413            12, 12, 18
Offender's Signature                ID#               Date

**RECEIVED**
MAR 0 8 2019
ADMINISTRATIVE

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: ___/___/___    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

Print Counselor's Name          Counselor's Signature          Date of Response ___/___/___

---

**EMERGENCY REVIEW**

Date Received: ___/___/___    Is this determined to be of an emergency nature?    ☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature                          Date ___/___/___



— Further Dr. Fahy made a "Referral" to the "UIC Contact Lens Clinic on February 21, 2018 See Attached (EXHIBIT "B")

— On February 27th, 2018 - Wexford Health Sources Incorporated, Utilization Management, Approved and Authorized the outpatient visit to "UIC Contact Lens Clinic." And "Gave Notice" of the Authorization ID: 786547127 to the site medical Director & HSA (See Attached: EXHIBIT "C") —— the appointment at "UIC Contact Lens Clinic" was scheduled for (July 13th, 2018) see Attached (EXHIBIT "C")

— (Dr. Rozel Elazegui, MD) the Site Medical Director Noted the "Collegial Review" (approval) to the "Contact Lens Clinic" at UIC for "evaluation" and "Contact fitting" See Attached: (EXHIBIT "D")

— In Mid-May 2018 Grievant spoke to "Nurse Cara" who Schedules Optometrist appointments in the Health Care Unit, and I inquired about whether or not I was approved to go to UIC for evaluation and contact lens fitting — Nurse Cara checked my medical file and said that Wexford had (approved) the UIC Appointment to the UIC Contact Lens Clinic and that she couldn't tell me the Exact-Date, but it was "already scheduled" and I would be sent to UIC within 60-days from that date.

— After Mid-July Grievant again - spoke to "Nurse Cara" and told her, "I still" havent been sent out to "UIC" to the Contact Lens Clinic, so "Nurse Cara" again checked the medical files, and came back and told me I should have been taken to "UIC" on July 13th, 2018, but that did not occur --. So "Nurse Cara" said she would bring it to the Attention of the Medical-Director, and they would "Re-Schedule" the appointment as soon as possible.

— Further Dr. Fahy made a "Referral" to the "UIC Contact Lens Clinic on February 21, 2018 See Attached (EXHIBIT "B")

— On February 27th, 2018 - Wexford Health Sources Incorporated, Utilization Management, Approved and Authorized the outpatient visit to "UIC Contact Lens Clinic" And "Gave Notice" of the Authorization ID: 786547127 to the site medical Director & HSA (see Attached: EXHIBIT "C") — — the appointment at "UIC Contact Lens Clinic" was scheduled for (July 13th, 2018) see Attached (EXHIBIT "C")

— (Dr. Rozel Elazegui, MD) the Site Medical Director Noted the "Collegral Review" (approval) to the "Contact Lens Clinic" at UIC for "evaluation" and "Contact fitting" See Attached: (EXHIBIT "D")

— In Mid-May 2018 Grievant spoke to "Nurse Cara" who Schedules Optometrist appointments in the Health Care Unit, and I inquired about whether or not I was approved to go to UIC for evaluation and contact lens fitting -- Nurse Cara checked my medical file and said that Wexford had (approved) the UIC Appointment to the UIC Contact Lens Clinic and that she couldnt tell me the Exact-Date, but it was "already scheduled" and I would be sent to UIC within 60-days from that date.

— After Mid-July Grievant again - spoke to "Nurse Cara" and told her, "I still havent been sent out to "UIC" to the Contact Lens Clinic, so "Nurse Cara" again checked the medical files, and came back and told me I should have been taken to "UIC" on July 13th, 2018, but that did not occur -- So "Nurse Cara" said she would bring it to the Attention of the Medical-Director, and they would "Re-Schedule" the appointment as soon as possible.



ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

— During the week of July 25th, 2018, and not being told anything, Grievant stopped "Nurse Page" while she was passing out medication and I asked her to see if my appointment to "UIC Contact Lens Clinic" for "evaluation" and "Lens fitting" had been re-scheduled -- she said she would check on it, but didn't get back with me.

— On August 3rd, 2018 after Grievant "voiced concerns", and "made multiple inquiries" about not being sent to a "scheduled Appointment" to "UIC Contact Lens Clinic" for "evaluation" and "Contact-fitting" -- (Dr. Okezie) then contacts (Dr. Garcia) in Collegial-Review to see if it was OK to "cancel" the authority to send Grievant to "UIC Contact Lens Clinic" for "evaluation" and "Contact-fitting" -- Thus, "Noting" this collegial-Review on 8-3-18. See Attached: (EXHIBIT "E")

— On August 7th, 2018 Wexford Health Sources Inc. "Notified" the (Site Medical Director & HSA) that in the July 31, 2018 collegial between Dr. Garcia and Dr. Okezie, they had Authority to cancel Authority to UIC per (Dr. Garcia). See Attached: (EXHIBIT "F")

— This Cancellation was done without (any) "examination" or "Being Seen" by any other (Optometrist) to "eliminate" or "Assess findings" contrary to (Dr. Timothy J. Fahy, OD)"Original Assessment" and necessity for an off-site "evaluation" and "Contact fitting" Due to "progressive myopia" and "astigmatism".

— On August 8th, 2018 -- (Dr. Timothy J. Fahy, OD) Noted that patient had been denied contact Lenses, and to re-evaluation of Refraction in 12 months. See Attached: (EXHIBIT "G")

RECEIVED
MAR 0 8 2019
ADMINISTRATIVE
REVIEW BOARD

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

— On August 30th, 2018 Grievant signed up for sick-call because no-one had informed him "why" he had not been taken out to "UIC", and (Nurse Page), after she reviewed the medical-chart, She told Grievant that he was not approved for contact lenses due to not being medically necessary and she will refer to on-site Optometrist for explanation. (EXHIBIT "H")

— As of todays date, Grievant has not seen an on-site optometrist, who is the same optometrist who made the UIC-Referral to begin with, due to "Progressive Myopia" and "Astigmatism."

— The Eighth and Fourteenth Amendments to the U.S. Constitution gives convicted inmates the right to adequate medical care. See: Estelle V. Gamble, 429 U.S. 97, 97 S. ct. 285 (1976) — The ("delay") or ("denial of") medical care may result in pain and suffering which no one can suggest would serve any penological purpose. — — This means that Wexford Health Services Inc. Through (Dr. Garcia) and (Dr. Okezie) after the prior Approval of a "UIC Contact lens Clinic" "Appointment and Scheduling (for) "evaluation" and "lens fitting" Due to "progressive Myopia" and "Astigmatism" to improve VA and suppress myopia progression, which is a serious medical need, are deliberately indifferent to this serious medical need and to delay this "prescribed and Approved" treatment for 12-more months will cause additional harm by "Further loss of eyesight" which will worsen. This is a serious medical need and "has been diagnosed by a physician (optometrist) as mandating treatment" to "suppress myopia progression." — — A second medical need exist when "the Failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. See: Mahan V. Plymouth County House of Corrections, 64 F.3d 14, 18 (1st Cir. 1995); Kosilek V. Maloney, 221 F. Supp.2d 156, 181 (D. Mass. 2002); Gutierrez V. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)

RECEIVED

MAR 0 8 2019

ADMINISTRATIVE
REVIEW BOARD

Here, (Dr. Garcia) and (Dr. Okezie)'s deliberate indifference to Grievants serious medical needs are likely to injure Grievant in the future. See: e.g., Blackmore V. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004); Geobert V. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007) -- the Constitution prohibits officials from "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle V. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285(1976) Thus, after an (Approved) "UIC Lens Clinic scheduled Appointment "for "Evaluation" and "Lens-fitting" was missed, (Dr. Garcia) and (Dr. Okezie), without "even seeing" or "examining" Grievant, took it upon themselves — after the (Approved and Scheduled) UIC Appointment was "missed" on July 13, 2018 — to "cancel" any "rescheduling" and made a "determination" that this "prescribed treatment" was not "medically-necessary" despite (Dr. Timothy J. Fahy's) professional Judgement as the "Local-optometrist" to Request the Appointment for "Evaluation" and "Lens-fitting" Due to this treatment being "medically necessary" to "suppress Myopia Progression" and improve VA. As a result, Grievant is suffering further "Vision-Loss" Due to (Dr. Okezie) and (Dr. Garcia's) via Wexford Health Sources Inc. "Collegial-Review" and deliberate indifference to Grievants serious medical needs.


Additionally, (Not Attached to Original Grievance filed 12-12-18) "Wexford Health Sources Inc." and its employee's, ie. facility Medical Director failed to adhere or follow, and thus Violate Administrative Directive 04.03.123 (EXHIBIT "I") and 04.03.103 (EXHIBIT "J") Attached hereto

RECEIVED
MAR 08 2019
ADMINISTRATIVE
REVIEW BOARD





# OPTOMETRY


EXHIBIT - "8"





*Optometry*
MEDICAL POLICIES AND PROCEDURES

## ROUTINE OPTOMETRY PROTOCOLS AND PROCEDURES

I.  Routine eye exams will be provided to eligible inmates every two years for inmates under age 50. Routine eye exams will be provided to eligible inmates annually for inmates over age 50.

II.  Routine onsite optometric eye examinations include the following:

    1.  Problem oriented history

    2.  Visual acuity

    3.  Eye health assessment including tonometry when indicted

    4.  Refraction

    5.  Disposition

    6.  Eyeglass order generation, accelerated recall or referral when indicated

    7.  Documentation and record keeping

III.  Upon intake, every inmate shall receive an eye screening and visual acuity assessment as part of his/her initial intake physical conducted by the onsite nursing staff or other designated onsite medical department personnel. Inmates who do not meet the vision portion of the intake physical shall be scheduled for routine optometry clinic:

    A.  Pass/Fail screening protocol(s) as listed in section V;

    B.  Inmates entering the system wearing prescription spectacle or contact lenses will be scheduled for routine optometry clinic;

    C.  Inmates with a previous diagnosis of glaucoma, other eye disease or other medical condition will be scheduled for baseline optometry assessment and appropriate recall/monitoring;

    D.  Inmates with a positive family history of glaucoma, other eye disease or other medical condition will be scheduled for baseline optometry assessment and appropriate recall/monitoring.

IV.  Inmates under age 50 who passed the visual portion of the intake physical or who are requesting routine optometry services within two years of their last routine eye examination provided in the system shall be screened for eligibility prior to being scheduled to see the optometrist. Inmates over age 50 shall be screened if requesting an eye exam if it has been less than one year. Pass/Fail screening protocol(s) are listed in section V.

V.  The following screening criteria apply:

    A.  20/40 acuity in one or both eyes with correction – acuity testing to be performed by the nursing or onsite medical staff;



 **Wexford Health**
SOURCES INCORPORATED

*Optometry*

MEDICAL POLICIES AND PROCEDURES

    **B.**    Emergence or manifestation of any ocular or systemic sign or symptom that the medical director, nursing staff or other onsite medical staff feel require optometry assessment;

    **C.**    Diagnosis of another immediate family member with glaucoma, other eye disease or other medical condition with potential ocular manifestations;

    **D.**    As referred by the medical director or medical department.

**VI.**   Inmates scheduled for onsite optometry services beyond the scope of routine exams, such as a more advanced ophthalmologic assessment of suspected eye disease or annual dilated retina evaluation of diabetic inmates, should be scheduled as per the protocols and procedures established for the health condition and/or as directed by the managing physician/optometrist/ophthalmologist.



# EYEGLASSES & CONTACT LENS PROTOCOLS

## Eyeglasses

I.  The Department shall pay for one pair of eyeglasses when determined medically necessary by an optometrist/ophthalmologist.

II.  All eyeglasses will meet or exceed FDA and ANSI Z-80 Dress Safety standards.

III.  The Department will supply one male zyl (plastic) frame style and one female zyl (plastic) frame style in multiple sizes. Frame style options, such as different color selection or upgraded frame options including metal frames, will NOT be supplied or available to inmates through the eyeglass program.

   A.  Any change from the standard issue frame style will only be supplied when medically indicated and approved through established Department protocols and procedures.

IV.  Lenses will be clear CR-39 plastic single vision or strait top multifocal design.

   A.  Any change from clear standard CR-39 plastic or strait top multifocal design lenses will require authorization as medically indicated and approval through established Department protocols and procedures prior to the order being sent to the lab for processing.

   B.  Tints and/or photochromatic lens options will only be supplied when authorized as medically indicated.

   C.  Medical conditions which may require tinted lenses include:

      1.  Albinism

      2.  Chronic/recurrent Iritis

      3.  Fixed/dilated pupils

      4.  Iris anomaly(s)

      5.  Other medical conditions on an "as needed" basis

   D.  Subjective photophobia is NOT a medical indication for tinting.

   E.  Cataracts, glaucoma, diabetic retinopathy, peripheral corneal scarring are conditions where tinted lenses do not provide any therapeutic purpose.

   F.  Polycarbonate lenses will only be supplied when authorized as medically indicated and for such conditions as functionally monocular patients, amblyopes or when 100% UV blocking is medically indicated

   G.  High index lens materials will only be supplied when authorized as medically indicated by excessive refractive error





*Optometry*
MEDICAL POLICIES AND PROCEDURES

H. For inmates assigned to job duties requiring eye wear:

    1. It is the facility's responsibility to provide eyewear to inmates assigned to work assignments requiring sun protection or other eye protection. Exception to this area would include amblyopic patients who should be fitted with polycarbonate eyeglasses.

I. Any other lens option(s) or upgrade(s) other than clear CR-39 plastic or strait top multifocal design will only be supplied when authorized as medically indicated.

V. Replacement eyeglasses will be provided by the Department every two years OR when there is a +0.50 diopter / 20 degree axis shift and/or one line of acuity improvement and/or as indicated by the examining optometrist/ophthalmologist, or when the integrity of the current pair of eyeglasses justifies new glasses due to severely scratched lenses, broken frames, etc.

    A. The inmate shall be financially responsible for the cost incurred for the replacement/repair of frames and/or lenses damaged or destroyed due to negligence or deliberate destruction.

        1. If sufficient funds are not available in the inmate's account and the medical staff has determined that the inmate's visual health would be adversely affected, the eyewear will be replaced and arrangements made to reimburse the Department from the inmate's account when funds become available.

    B. The Department shall repair and/or replace all frames and lenses damaged or destroyed as a direct result of an inmate's work assignment(s).

        1. The work supervisor shall determine whether the damage occurred as direct result of an inmate work assignment.



VI. An inmate may not possess more than two pair of prescription eyeglasses at any time during their incarceration.

    A. An inmate is permitted to keep their current glasses worn upon intake if approved by the intake facility. When transferring from the intake facility to another facility or a subsequent intra-facility transfer, the decision of the intake facility shall be honored and the inmate permitted to retain current glasses until:

        1. The current prescription is no longer medically correct; or

        2. The current lenses and/or frames are destroyed, lost or damaged.

    B. An inmate shall not be permitted to assume the responsibility of discarding any extra pair(s) of eyeglass in excess of two. The extra pair will be turned into the medical department where arrangements will be made at the inmate's expense to send them to the inmate's home, stored in property or given to Security to dispose of properly.

## Contact Lenses

I. Contact lenses shall only be provided when deemed medically necessary and authorized through established Department protocols and procedures for conditions such as true aphakia and keratoconus and shall be addressed on a case-by-case basis.





*Optometry*

MEDICAL POLICIES AND PROCEDURES

A. The Department shall be responsible for supplying necessary solutions and other materials for the maintenance of authorized medically necessary contact lenses.

II. Contact lenses are provided only for medical needs such as:

A. Keratoconus

B. Severe myopia or hyperopia (greater than +/- 15 diopters) where standard lenses do not afford adequate refraction.

C. Other medical needs as determined on a case-by-case basis.

III. Inmates entering the system wearing contact lenses will be permitted to retain his/her current contact lenses only until Department issued prescription eyeglasses are obtained.

A. The inmate shall be responsible for the cost of supplying through the medical department all necessary solutions and other materials for the maintenance of contact lenses until such time as eyeglasses are acquired.

B. Upon receipt of prescription eyeglasses, the inmate's contact lenses will be turned into the medical department where arrangements will be made at the inmate's expense to send them to the inmate's home, stored in property or given to Security to dispose of properly.

C. Inmates entering the system with both acceptable contact lenses and prescription glasses will be required to discontinue contact lens wear and the contact lenses disposed of as indicated in the preceding subsection II.B.

IV. The type of contact lens, hard or soft, is determined by the optometrist and not by patient request.

Approved by the Wexford Medical Advisory Committee – 05/26/08; 11/07; 10/08

OPT-6